*Middlesex,*
*July,*
*1823.*

*Turner*
*v.*
*Coe.*

—◦◦◦—

## The inhabitants of the town of MIDDLETOWN *against* The inhabitants of the town of LYME.

A person having a settlement in this state, loses it, by gaining a settlement in another state, and can regain a settlement here, in no other manner than any other inhabitant of another state.

This was an action of *assumpsit*, for supplies furnished to, and money laid out and expended for the support of *Daniel Mather*, and his wife and children, from the 1st of *January* 1806, to the 1st of *January* 1816, alleged to have been legally settled inhabitants of the town of *Lyme*, residing in *Middletown*, destitute and needing relief.

The cause was tried at *Haddam*, *October* term, 1822, before *Peters*, J.

*Timothy Mather*, the father of *Daniel Mather*, was born in *Lyme*, and had a legal settlement there, at the time of *Daniel's* birth, in the fall of 1773. In the summer of 1774, *Timothy* and his family, including *Daniel*, removed into the town of *Stoddard* in *New-Hampshire*, where he remained with his wife and family, without having been warned to depart, until the fall of 1783; the law of *New-Hampshire*, during this period, being such, that any person, who resided in any town or place there-

in for the term of one year, without being warned to depart therefrom, gained a settlement in such town or place. In the fall of 1783, they removed back to *Lyme*, where they lived and had their home, supporting themselves, until the death of *Timothy*, in 1810 or 1812. *Daniel* never gained any settlement in his own right. The plaintiffs claimed, that *Timothy*, by gaining a settlement in *New-Hampshire*, did not lose his settlement in *Lyme*; but that, on his returning into the state, he became a legally settled inhabitant of *Lyme*. The judge instructed the jury, that by the settlement gained in *New-Hampshire*, *Timothy* lost his settlement in *Lyme*, and could not regain a settlement there, unless he had been admitted by a major vote of the inhabitants of the town, or by the consent of the civil authority in, and select-men of the town, or unless he had been appointed to, and executed some public office, or had been possessed in his own right in fee of real estate, of the value of 100 *l.*, in the town, during his residence therein. The jury returned a verdict for the defendants; and the plaintiffs moved for a new trial, on the ground of a mis-direction.

*Platts* and *Hotchkiss*, in support of the motion contended, 1. That *Timothy Mather*, as a natural born citizen of this state, was entitled to all the rights and privileges of such a citizen, one of which was a settlement in the town in which he was born; that his removal to another state, did not constitute a renunciation of his allegiance to his native state, nor was he thereby discharged from such allegiance; and that allegiance and the rights of citizenship are reciprocal, and while the former remains unchanged and unimpaired, the latter are equally so.

2. That *Timothy Mather's* gaining a settlement in another state, had no effect upon his settlement here. The settlement of a pauper in any community, is a matter of positive regulation; and when once acquired, is not lost but by another settlement gained within the same jurisdiction, where all the consequences, as they respect the provision made for the support of paupers, may be enforced. *Townsend* v. *Billerica*, 10 *Mass. Rep.* 411. *Canton* v. *Bentley*, 11 *Mass. Rep.* 441.

*Waite*, contra. This case does not depend upon a question of allegiance, or the rights of citizenship. The plaintiffs claim of the defendants a sum of money, disbursed by the former, for the support of certain indigent persons. At common law, no

recovery can be had for such disbursements. If the defendants are liable, it is because the statute law of this state in relation to the settlement of paupers, has made them so. Now, it has been repeatedly and uniformly decided, by the superior court, that by our law an inhabitant of this state loses his settlement here, by gaining one in another state.

*Middlesex,*
*July,*
1823.

*Middletown*
*v.*
*Lyme.*

PETERS, J. This is an action of *assumpsit* for money expended, by the town of *Middletown*, in the support of *Daniel Mather*, claimed to be a poor inhabitant of the town of *Lyme*. It appears, by the motion, that the pauper is the legitimate son of *Timothy Mather*, and was born at *Lyme*, in 1773, where his father was then settled; that in 1774, *Timothy Mather* removed, with his family, including *Daniel*, to *New-Hampshire*, and there acquired a settlement; that in 1783, they returned to *Lyme*, and there resided more than twenty years, but gained no new settlement, unless by residence;—and the question now is, whether an inhabitant of a town in this state, having acquired a settlement in another state, can regain a settlement *here*, in any other manner than any other inhabitant of another state?—Vide *Statutes of October*, 1770, *p.* 354 Revision of 1821, *p.* 279.

When an inhabitant of this state acquires a new settlement, the first becomes extinct. *Hebron* v. *Colchester*, 5 *Day* 169. "A settlement always exists until it is superseded by another; and there is no case, where a settlement ceases by any other method." *Rex* v. *St. Botolphs, Burr. Sett. Ca.* 370. *Newtown* v. *Stratford*, 3 *Conn. Rep.* 600. "And a person doth not lose a settlement, 'till another is gained." *Norwich* v. *Windham*, 1 *Root* 232. 1 *Swift's Syst.* 171.

But it may be said, that this relates to transitions from one town to another in this state. As far back as we can trace our judicial history, the law has *not been so understood*. In 1792, it was decided, by the superior court, that a woman married to an inhabitant of *Massachusetts*, ceased to be an inhabitant of *Connecticut*; and that she and her children were not entitled to maintenance in her native town. *Windham* v. *Norwich*, 1 *Root* 408. 1 *Swift's Syst.* 171. The same point was decided in *Glastenbury* v. *Hebron*, at *Hartford*, superior court, *February* term, 1820; and it was said by the court, that such had been the uniform course of decisions. And as Lord *Kenyon* said, on another occasion, "The circumstance of no writ of error having been brought to reverse any of these judgments, is a

strong proof of the universal opinion of the profession upon this subject." The *King* v. *Lynn*, 2 *Term Rep.* 735. Indeed, I never heard of a contrary opinion or doubt, until the cases of *Townsend* v. *Billerica* (a) and *Canton* v. *Bently* (b) appeared in the *Massachusetts* Reports, which, with all due deference to a highly respected court, I am constrained to say, are not law *here*. Were we to adopt the principles of those decisions, the limits of our state would hardly contain our absent brethren and their descendants, who might be returned upon us. *Stare decisis*, is a sound judicial maxim, especially in settlement cases, where the stability of a rule is of more importance than its technical correctness.

I would not advise a new trial.

CHAPMAN and BRISTOL, Js. were of the same opinion.

HOSMER, Ch. J. and BRAINARD, J. being interested in the event of the suit, gave no opinion.

New trial not to be granted.

(a) 10 *Mass. Rep.* 411.   (b) 11 *Mass. Rep.* 441,