The town of COLCHESTER *against* The town of EAST-LYME.

Where it was provided, by the act incorporating a new town, that "all persons who may hereafter become paupers, and have not gained a settlement elsewhere, shall be chargeable to said town, provided they *had a residence* within its boundaries, and removed therefrom, prior to the passing of this act ;" it was held, that the term "residence," as here used, imported a domicil only, in contradistinction to such a residence as would, by the general law, be necessary to confer a settlement ; and that consequently, a person who had resided one or two years in such town, and had removed therefrom prior to its incorporation, and afterwards became a pauper, not having gained a settlement elsewhere, had his settlement in that town.

The emancipation of a minor son, and its effect as to his settlement, discussed, *New-London,* but not decided.

*New-London,*
July, 1847.

Colchester
*v.*
East-Lyme.

This was an action for supplies furnished to *William H. B. Cone* and his family, they being paupers.

The cause was tried, on the general issue, at *New-London, September* term, 1846, before *Hinman, J.* The jury returned a special verdict, finding the following facts.

*William H. B. Cone* was the son of *William P. Cone,* who was the son of *Henry Cone.* In *June* 1814, *Henry Cone,* who, before that time, had been a settled inhabitant of that part of the town of *Lyme,* which is now *East-Lyme,* gained a settlement, by residence, in that part which is now *Lyme,* which he held until his death, in 1827. *William P. Cone* was born in what is now *East-Lyme,* in *August* 1796 ; and lived there until *August* 1812 ; when he went to his father's, in that part which is now *Lyme.*

In the year 1812, when *William P. Cone* was between sixteen and seventeen years of age, an arrangement was entered into between him and his father, stipulating, among other things, that he, (*William P. Cone,*) should have his time, and be free from his father's controul from that time, and be entitled to his own services ; and that his father should not, from that time, be liable, in any way, for his acts. This arrangement was reduced to writing ; but the terms of it, except as above stated, were not found by the jury. It was so far carried into effect, that from that time, his father exercised no controul over him ; and he never afterwards made his home at his father's, but occasionally visited there, until he married, in 1816 ; when he went to house-keeping for himself.

*William H. B. Cone* was born in that part of the town which is now *Lyme,* in 1817. *William P. Cone* and his family, including *William H. B. Cone,* resided in that part of *Lyme,* which is now *East-Lyme,* for one or two years prior to *January* 1835 ; when they removed therefrom to *Glastenbury.*

*William H. B. Cone* was lawfully married to his present wife, one of the paupers, in 1837 ; when he separated from his father's family, and has ever since remained living separate. He and his family, since 1837, have resided in other towns than *Lyme* or *East-Lyme,* without gaining any settlement else-

where, and have never gained any settlement in their own right. They became paupers, in *December* 1844 ; and supplies were furnished to them, by the town of *Colchester*, as stated in the declaration. The town of *East-Lyme* was incorporated, in the year 1839, by an act or resolve of the General Assembly, containing the following provisions : "All persons who may hereafter become paupers, and residing in other towns except said *Lyme* and *Waterford*, who have not gained a settlement elsewhere, shall be chargeable to said town of *East-Lyme*, provided they had a residence within its boundaries, and removed therefrom, prior to the passing of this bill."

The court accepted the verdict ; and thereupon reserved the case for the advice of this court, upon the question, whether upon these facts, the town of *East-Lyme* is chargeable in law for the support of the paupers.

*McCurdy* and *Culver*, for the plaintiffs, contended, 1. That *William P. Cone*, whose settlement *William H. B. Cone* takes, having been emancipated in 1812, did not take the settlement which his father gained in 1814, but that which he had at the time of emancipation, *viz.* in *East-Lyme*. *Springfield* v. *Wilbraham*, 4 *Mass. R.* 493. 496. *Charlestown* v. *Boston*, 13 *Mass R.* 469. 472. *Lubec* v. *Eastport* 3 *Greenl.* 220. *Wells* v. *Kennebunk*, 8 *Greenl.* 200. *Morse* v. *Welton*, 6 *Conn. R.* 547. *Colchester* v. *Lyme*, 13 *Conn. R.* 247.

2. That the pauper, having resided one or two years on territory now included in the town of *East-Lyme*, prior to the incorporation of that town, and immediately preceding his removal therefrom, had his settlement there, by virtue of the charter of incorporation. This point turns on the import of the word "residence," as used in the charter. It is not synonymous with *settlement*, but has every where a different meaning. It is a man's *home* for the time—his domicil. At any rate, there is nothing to show that this term has a different meaning in the finding of the jury from its true import in the charter. The jury have virtually found, that the requirement of the charter in this respect, is here satisfied.

*Strong* and *Lippitt*, contra, contended, 1. That *W. P. Cone*, by the general law of settlements, took the settlement in *Lyme*,

which his father acquired in that town, in 1814 ; and *W. H. B. Cone*, the pauper, not having gained a settlement in his own right, took that of his father so gained.

2. That this result was not prevented, by reason of any emancipation of *W. P. Cone*. In the first place, he was a minor, unmarried, and had not contracted any relation inconsistent with a subordinate situation in his father's family. 1 *Bla. Com.* 363. n. *The King* v. *Witton* &c. 3 *Term R.* 355. *The King* v. *Offchurch, Id.* 114. 116. *The King* v. *Roach,* 6 *Term R.* 254. *Bozrah* v. *Stonington,* 4 *Conn. R.* 375. *The King* v. *Wilmington,* 5 *B. & Ald.* 525. (7 *E. C. L.* 180.) Secondly, the contract of emancipation was not binding on the son ; and his legal dependence for support on his father, as a member of his family, continued. Thirdly, the case was not different from that of an indented apprentice ; yet that was never supposed in this state to constitute emancipation. *Bozrah* v. *Stonington,* 4 *Conn. R.* 373.

3. That there was nothing in the act incorporating the town of *East-Lyme,* which interfered with the general law of settlements. The words " had a residence," in the second section of that act, mean *had a settlement. Mansfield* v. *Granby,* 1 *Root* 180. *Vernon* v. *East-Hartford,* 3 *Conn. R.* 483. *Simsbury* v. *Hartford,* 14 *Conn. R.* 193.

STORRS, J. Laying out of this case the question of emancipation, which has been raised, it is conceded, on the facts specially found by the verdict, that when the town of *East-Lyme* was constituted out of portions of the towns of *Lyme* and *Waterford,* the paupers to recover for whose support the present action is brought, had, derivatively, a legal settlement in the present town of *Lyme,* where they would now be deemed to be settled, were it not that the following provision was introduced into the act creating the town of *East-Lyme* : " All persons who may hereafter become paupers, and residing in other towns except said *Lyme* and *Waterford,* who have not gained a settlement elsewhere, shall be chargeable to said town of *East-Lyme,* provided they had a residence within its boundaries, and removed therefrom, prior to the passing of this bill." *Resolves and Priv. Acts of* 1839. *p.* 41. It is also conceded, that the case of the paupers in question is embraced within the terms of this provision ; and the ques-

*New-London, July, 1847.*

Colchester
*v.*
East-Lyme.

*New-London,*
*July, 1847.*

*Colchester*
*v.*
*East-Lyme.*

tion is, whether the word " *residence,*" as used in it, should be construed to mean the place of settlement of the paupers therein mentioned, or only their place of domicil.

We are of opinion, that this provision is substantially the same as that in the act dividing the town of *Woodbridge,* which we had occasion to consider in the case of *Waterbury* **v.** *Bethany,* recently heard before us at *New-Haven* ; (*ante, p.* 424.) and that it should therefore receive a similar construction. Hence it becomes unnecessary to consider the question of emancipation ; and the result is, that the superior court should be advised to render judgment for the plaintiffs.

In this opinion the other judges concurred.

Judgment for plaintiffs.