The town of BETHLEM *against* The town of ROXBURY.

Where a bastard was born in the state of *New-York,* in the year 1811, of a mother having a settlement in this state; and in 1814, the mother removed, with such bastard child, into this state, where she has since remained, without having, at any time, lost her original settlement; it was held, 1. that such bastard child had a settlement by birth, in the state of *New-York* ; 2. that on his coming into this state, he did not take the settlement of his mother. [The chief justice dissenting.]

In the absence of any statute regulation, the acquisition of a settlement in one state, puts an end to a prior one of the same person in another state.

THIS case came before the superior court, by a submission of the parties under the statute of 1848 ; (*Stat.* 109, 110. § 211.) and was there reserved for the advice of this court. The case agreed upon was as follows.

*Esther A. Lucas* was born in *Roxbury*, in this state, in the year    ; and was a settled inhabitant of that town. She removed into the state of *New-York,* in the year 1810, and cohabited there with *Dean Bishop,* as her husband, to whom she was never legally married, for the reason that he had a wife then living in *Connecticut ;* and during her residence in the state of *New-York,* she had an illegitimate son, by the name of *Sheldon Bishop,* born in the town of *Stamford,* in the state of *New-York,* in the year 1811 ; she then residing in said *Stamford,* with her reputed husband. But said *Esther*

A. did not then, or since, gain any settlement in the state of *New-York*, nor in any other place in this state, or elsewhere. She continued thus to reside in the state of *New-York*, until the year 1814, and had divers other children, while so residing in that state, all of whom are the reputed children of said *Dean Bishop*. In 1814, she, with her son *Sheldon* and other children, and her reputed husband, removed into the town of *Salisbury*, in this state ; and continued to reside there, for about four years ; and then returned to the state of *New-York*, with her son *Sheldon* and other children and reputed husband ; and since that time, they have all resided in the states of *New-York, Connecticut* and *Massachusetts*. *Sheldon Bishop* afterwards, in the town of *Bethlem*, intermarried with *Angeline Boutor*, an inhabitant of the state of *Connecticut ;* and they have five children, two of whom were born in *Salisbury, Conn.*, to wit, *Sheldon G.* and *Milan G.* The remaining three were born, as is supposed, in the state of *Massachusetts*.

On the 17th day of *November*, 1847, these five children came into the town of *Bethlem*, from the town of *Salisbury*, in a suffering condition, and have ever since required, and received, support from the town of *Bethlem*. The town of *Roxbury* was duly notified of the condition of said children.

The parties, and the court, and the counsel, are to have full liberty to make use of the statutes and reports of the states of *New-York* and *Massachusetts*, to ascertain the law of those states, or either of them.

Upon the foregoing facts it is submitted, whether the town of *Bethlem* is entitled to recover from the town of *Roxbury* for the support of said paupers, or either of them. And if the above point is decided in favour of the town of *Bethlem* against the town of *Roxbury*, the amount to be recovered is to be settled, by the court, upon evidence, unless the parties can agree on the amount.

*Seymour* and *G. C. Woodruff*, for the plaintiffs, contended, That *Sheldon Bishop*, the father of the paupers, had his settlement in *Roxbury*. The case shews, that his mother's settlement was there ; and that she never lost that settlement. *Sheldon* was born in the state of *New-York*. When three years of age, he removed, with his mother, to *Salisbury*, in

*Litchfield, July, 1850.*

*Bethlem v. Roxbury.*

this state.    While they remained there, her settlement in *Roxbury* continued.    Now, whether by the law of *New-York* he would have been treated as having a settlement there, or not, is immaterial; because on her return to this state with him, her settlement in *Roxbury* was communicated to him by parentage, which supersedes a settlement by birth.    *Newtown* v. *Stratford,* 3 *Conn. R.* 600.    *Oxford* v. *Bethany,* 19 *Conn. R.* 229.    *Woodstock* v. *Hooker,* 6 *Conn. R.* 35.    *Danbury* v. *New-Haven,* 5 *Conn. R.* 584.    *New-Haven* v. *Newtown,* 12 *Conn. R.* 165.    *Newtown* v. *Fairfield,* 18 *Conn. R.* 350.

*Orton,* contra, contended, 1. That *Sheldon Bishop,* being a bastard, born in the state of *New-York,* had a settlement there by birth.    *Wynkoop* v. *Overseers of the Poor,* 3 *Johns. R.* 15.    *Delavergne* v. *Noxon,* 14 *Johns. R.* 333.

2. That having a settlement by birth in *New-York,* and never having gained one in his own right in this state, his place of settlement was not changed, by his removing into this state.

3. That the paupers, being the legitimate children of *Sheldon Bishop,* take his settlement, by parentage.

ELLSWORTH, J.    The paupers in question are the legitimate children of *Sheldon Bishop,* and have never had a settlement in this state, in their own right.    Their settlement will follow that of their father.    Their father was born in *Stamford,* in the state of *New-York,* of *Esther A. Lucas,* an unmarried woman, then living in said town of *Stamford;* but she had never gained a settlement in that state, and had never lost her settlement by birth, which she had in the town of *Roxbury,* in this state.

In the argument of the case, the counsel for both parties have proceeded upon the ground, that in 1811, when *Sheldon Bishop* was born, the law of *New-York* was, as to the settlement of a bastard, born in that state, and especially of a mother having no settlement in that state, the same as the common law, *viz.,* that a bastard is settled where born.    Several adjudications to this effect were cited from their books, and their correctness was not questioned.    No point was made by the counsel but upon this assumption ; so that we have had

no occasion to inquire, when, if ever, they have changed the common law, or what construction has been put upon any of their statutes, if they have any, touching the question.

We say then, the bastard child did not take the settlement of its mother, nor did the child, born there, take the settlement of the mother in *Connecticut*. Had the child been legitimate, it would have been otherwise. This precise question was so adjudged in *Wynkoop* v. *Overseers of Poor,* 3 *Johns. R.* 16. See likewise the other cases cited at the bar. Hence it follows, that *Sheldon*, when born, was settled in *Stamford ;* and having that settlement, he had no other, at the time of his birth; for he could not have two settlements, one in *New-York*, and one in *Connecticut,* at the *same time*. Within these states, the acquisition of a new settlement in the same or another state, puts an end to a prior one, unless there be some statutory provision to the contrary, as was decided in *Middletown* v. *Lyme,* 5 *Conn. R.* 95. where a settlement in this state was lost, by acquiring a new settlement in *New-Hampshire*.

So it has been repeatedly held, on the circuit, before and since that case. If a woman settled in *Connecticut*, marries a man settled in *New-York*, she loses her settlement here, absolutely ; and so if she acquired a settlement there, in any way, she must re-acquire one here, or she is, if poor, a foreign pauper. The same is true of an illegitimate child. If it is settled by *birth* in *New-York*, and comes here, it comes *with a settlement*, and can be treated like any inhabitant of *New-York*. And because our law declares that an illegitimate child does not take a settlement by birth ; it has no application where the *contrary* is true.

It has been urged, that this bastard child, though born in *New-York*, was born of an inhabitant of *Roxbury*, and therefore took the mother's settlement in that place. This would be true, had the child been legitimate, as then, it would have had no settlement by *birth* in *Stamford ;* but being illegitimate, the law of *New-York* gave it a settlement where born, and having one settlement, it did not then have another; *i. e.* one by birth in *New-York*, and one by parentage in *Connecticut*. This distinction was taken by this court, in *Woodstock* v. *Hooker,* 6 *Conn. R.* 36. where a bastard born in *Massachusetts*, of a person settled in *Woodstock*, was held to take the

mother's settlement in *Connecticut*, because by the *statute of Massachusetts*, the bastard gained no settlement in *Massachusetts* by *birth*.

It has been further said, that at all events, when *Sheldon Bishop* returned to *Connecticut*, the law of *Connecticut* took effect, and settled him with his mother in *Roxbury*. For it is said, this would have been the case, if he had been born in *Connecticut;* and so if the mother should acquire a new settlement, it would be imparted to a minor child ; and therefore her existing settlement in *Roxbury* should become his, as soon as he comes into the state. But why this? The child comes into *Connecticut having a settlement in New-York*. When does he throw off that settlement? He took it by birth, when parentage existed, and in spite of parentage. So long as he lived in *New-York*, he certainly had no settlement in *Connecticut*,—not even according to our own law. How then, by passing the line, is the settlement changed ; or is he now settled in *Connecticut, ab initio*, by parentage? Had he lived with his mother in *Connecticut*, he would have taken a new settlement, had she acquired one. But she acquired none ; and no case can be found which has gone beyond the *acquisition of a new settlement* by the mother.

Our conclusion, therefore, is, that these children have no settlement in the town of *Roxbury*, but took the settlement of their father in *Stamford*, where he was born, and has never gained another settlement.

We advise the superior court, that judgment be rendered for the defendants.

In this opinion WAITE, STORRS and HINMAN, Js., concurred.

CHURCH, Ch. J., dissented, remarking to the following effect.

The decision of this case, if I understand it, is predicated entirely upon the assumption that when *Sheldon Bishop*, the father of the paupers in question, was born, the law of the state of *New-York* was so, that a bastard child was legally settled in the town wherein he was born, and not in the place of its mother's settlement. Such was not proved nor admitted to have been the law of that state, as I believe. The

only adjudged case relied upon to prove such to have been the law, was *Delavergne* v. *Noxon*, 14 *Johns. R.* 333. ; but what the court is reported to have said in that case, was, in the subsequent case of *Canajoharrie* v. *Johnson*, 17 *Johns. R.* 41., conceded to have been a mistake ; and that it was so is certain, for in the statutes of the state of *New-York*, published in the year 1802, I find it expressly enacted, that, " Every bastard shall be deemed and adjudged settled in the city or town of the last legal settlement of its mother." This law was in force in 1811, when *Sheldon Bishop*, the bastard, was born. The law, therefore, of the state of *New-York*, not being in conflict with our own laws on the subject of the settlement of illegitimate children, at any rate, not proved to be so, our law should furnish the rule of decision. *Robinson* v. *Dauchy*, 3 *Barb. Sup. Ct. R.* 20.

*Litchfield,*
*July*, 1850.

Bethlem
*v.*
Roxbury.

We were referred, on the argument, to be sure, to what was said by *Kent,* Ch. J., in the case of *Wynkoop* v. *The Overseers of New-York,* 3 *Johns. R.* 15. But that distinguished judge cannot be understood, I think, to have meant, in face of the statute above recited, that the law of the state of *New-York* did not recognize a bastard's settlement by parentage, as recognized in this state ; but only, that, as the mother had no settlement there, the courts in that state, in a bastardy prosecution, would not regard either a foreign settlement or the laws of another state, but would treat the bastard as settled where born, *pro hac vice,* so as to enable that town or city, to procure an order of filiation upon the putative father. Unless this was so, there could be no order of filiation at all, and no remedy at all. If then, the law of this state is to be our rule of judgment, or if the law of the state of *New-York,* where the bastard was born, was not in conflict with it, I am sure that the decision of this court, in the case of *Woodstock* v. *Hooker,* 6. *Conn. R.* 35. is decisive of this. It was there holden, that a bastard born in *Massachusetts,* of a mother having a settlement in this state, takes the settlement of the mother.

But if the law of the state of *New-York* on this subject was, as it was assumed to have been, still I am persuaded, that when the mother of *Sheldon Bishop* returned, with her illegitimate child, into this state, he became settled with her in the town of *Roxbury,* which was her place of settlement. I

do not think a settlement under the laws of a sister state, any more than under the laws of a foreign country, fixes or affects the condition or the capacity of the persons thus settled, so as to attach to them wherever they go, and so as to controul their fortune or their fate after their domicil has been unequivocally transferred to another state or nation. The settlement laws of different states are only local regulations, bearing upon the respective counties, towns or cities therein, and defining which of these shall stand charged with the relief and support of the poor, and can have no effect upon the legislation or laws of other states on the same subject. " The change of domicil," says *Pothier,* " delivers persons from the empire of the laws of the place of the domicil they have quitted, and subjects them to those of the new domicil they have acquired." *Sto. Confl. L.* § 46. 59. 69. 70. 92. 103. *Doe* d. *Birtwhistle* v. *Vardill,* 5 *B. & Cress.* 438. (11 *E. C. L.* 266.) Such, I think, is the principle recognized and relied upon, by *Kent,* Ch. J., in the case already cited of *Wynkoop* v. *The Overseers of New-York;* and such clearly is the doctrine of the courts of *Massachusetts.* *Townsend* v. *Billerica,* 10 *Mass. R.* 411. *Canton* v. *Bently,* 11 *Mass. R.* 441.

The only case of modern date relied upon in support of a contrary doctrine, is that of *Middletown* v. *Lyme,* 5 *Conn. R.* 95. If that case affects this, it is only by a very loose analogy. The person whose settlement was there in question, had voluntarily renounced his domicil and his settlement in this state, and by his own agency, had acquired another in *New-Hampshire.* It stands alone; and moreover, I think, the authority of it has been repealed, by *sec.* 20. *ch.* 2. of our Revised Statutes, entitled, " An act providing for the support of paupers;" by which, it is now provided, in opposition to the doctrine of that case, that a person returning into this state from another, where he has gained a settlement, shall be chargeable to the town in this state, where he had his last legal settlement.

The feudal and repulsive doctrine of the common law, that a bastard child has no parent, no protector, not even a mother, has never found favour in this state. Here, an illegitimate child has a settlement by parentage, and may inherit its mother's estate; and it is an established rule of our law, founded upon the natural relationship of parent and child, that

a bastard, at its birth, takes the mother's place of settlement, and follows it, during minority, through all its changes, as a legitimate child follows the settlement of its father. If the mother, by her own act, acquires a new settlement, her illegitimate child goes with her; and if, by her marriage, the law transfers her place of settlement to that of her husband, the same, by operation of law, becomes the place of the settlement of the child ; and this, whether the child be born in this state or out of it. These doctrines of our law have grown out of the deep-seated principles of natural affection, and are essentially invaded, by the decision of this case. *Danbury* v. *New-Haven*, 5 *Conn. R.* 584. *Woodstock v. Hooker*, 6 *Conn. R.* 35. *New-Haven* v. *Newtown*, 12 *Conn. R.* 165. *Oxford* v. *Bethany*, 19 *Conn. R.* 229.

Although the place of birth is, in all cases, *prima facie*, the place of a child's settlement, whether it be legitimate or illegitimate, yet the place of the parent's settlement, when discovered, will always supersede it ; and I have not discovered any plausible reason why the present case should be made an exception to this rule. *Newtown* v. *Stratford*, 3 *Conn. R.* 600. *Woodstock* v. *Hooker*, 6 *Conn. R.* 35. If the mother would have communicated to this child, *Sheldon Bishop*, a new settlement, which she might have gained in *Roxbury*, after her return to this state, it seems to me, that it must be true that she communicated to him the settlement which she already had in that town.

Judgment for defendants.