## TOWN OF MIDDLEBURY *vs.* TOWN OF BETHANY.

In a suit for supplies furnished to a pauper the question was whether his grandfather had any settlement in this state. He had lived in the town of *W*, but it was conceded that he had no settlement there. Held that his declaration, while living in *W*, that he came there from the state of Pennsylvania, was not sufficient of itself to create a presumption, either that he had no settlement in this state, or that he had a settlement in Pennsylvania.

Whether a father, having a settlement in another state, and coming into this state, communicates such settlement to his wife and children, so as to prevent the former from retaining a settlement previously acquired here, and the latter from following her original settlement :—*Quere.*

ASSUMPSIT for supplies furnished to Sophia Crook, a pauper, alleged to belong to the defendant town. The case was tried in the superior court on the general issue, closed to the court, and the following facts found :—

Sophia Crook, the pauper, was born in Waterbury, on the

29th of September, 1835, and has never gained any settlement in her own right. She is the lawful child of George Crook. George Crook was born in Waterbury, in 1807, and is the son of Elijah Crook and Anna Perkins, who were married in Waterbury about the year 1806. He has never gained a settlement in his own right. His mother, Anna Perkins, was born in that part of the town of Woodbridge which is now Bethany, and was the daughter of Edward Perkins, a settled inhabitant of Woodbridge, now Bethany, and of Rosanna Judd of Waterbury. Rosanna's father died when she was a child, and her mother married James Brown, then residing in Waterbury, and removed to Waterbury, taking Anna (then a child) with her, and there Anna continued to reside until her death, about the year 1809. Elijah Crook the grandfather of the pauper came to Waterbury in the fall of 1801, and resided there continuously until about the year 1810; and it was proved by the plaintiffs that he never gained a settlement in Waterbury; and it was also proved by his own declarations made while residing in Waterbury, if such declarations are admissible for such purpose, that he came to Waterbury from the state of Pennsylvania. It was not proved by either party that Elijah Crook ever had any settlement in Connecticut, and it was not proved and is not found in what state his settlement was.

Upon these facts the case was reserved for the advise of this court.

*Kellogg,* for the plaintiffs.

*C. R. Ingersoll,* for the defendants.

HINMAN, C. J. The plaintiffs in this case take the burden of showing that the pauper in question has her settlement in Bethany. They attempt to do this by claiming that under the circumstances she takes the settlement of her grandmother who was settled there, that is, in that part of the town of Woodbridge which is now Bethany, previous to her intermarriage with Elijah Crook, the grandfather. They are cor-

rect in their claim that she takes the settlement of her grandmother, if it appears that neither her grandfather or her father had a settlement which could be communicated to her, and as the father, though born in Waterbury, would take his father's settlement if he had one, the case turns upon the fact whether the grandfather had such a settlement. He was not settled in Waterbury when his son was born, and neither of them ever gained a settlement there. But this amounts to nothing. The plaintiffs must go further and show that he had no settlement that could be communicated to his wife and children, before they can resort to the settlement of her maternal ancestors. Hence they attempt to show the declarations of Elijah Crook, while residing in Waterbury, that he came there from the state of Pennsylvania, intending, as we suppose, that the court should infer from them that he had no settlement in this state. But we do not think that this inference can properly be drawn from these declarations, assuming them to be true, and legitimate evidence for the purpose for which they were offered. It is perfectly consistent with the truth of these declarations, that he belonged to some town in this state, and had only been absent from it for a shorter or longer time when he came to Waterbury from Pennsylvania. The evidence therefore is too vague and uncertain for us to found a presumption upon it, either that he had no settlement in the state, or that his settlement was in Pennsylvania. No one would claim that evidence of this description would be sufficient to charge another town with the support of a pauper, because it appeared by it that at some remote period his ancestor came from such town, without going further and showing that he was born there, or in some way had gained a settlement there. If he first came to Waterbury from Pennsylvania, it shows that he had no settlement in Waterbury; and this, we think, is giving the evidence its full force and effect. As it is perfectly consistent with this fact, therefore, that Elijah Crook might have been a settled inhabitant of some other town in the state, we have not thought it necessary to examine the question whether a settlement in another state would be communicated to his wife and children, so as to

prevent the wife from retaining her original settlement, and the children from following her. We do not lay much stress upon the circumstance that the pauper and her father were both born in Waterbury, since the facts show that neither of them had their settlement there. They must have taken the settlement of Elijah Crook if he had one, but if he had no settlement that could be communicated to his descendants they would then take the settlement of Anna Crook, the grandmother of the pauper, which would carry her to Bethany. But as the burden of proof is upon the plaintiffs, and as a person's settlement is to be derived in the first place from the father, it follows that they must show that he had no settlement in the state which he could communicate to his child, before they can resort to the settlement of any of the pauper's maternal ancestors. The plaintiffs do show that the father had no settlement in Waterbury by showing that his father never gained a settlement there. But the burden of proof is still upon them to show where the grandfather's settlement was, or rather, to show that he had none that he could communicate to his son; and we think they can not shift this burden from themselves to the defendants by merely proving that at one time he came from another state. They should go further, and show that he belonged or had a settlement there. If they had done this then the question would arise whether such a settlement would be communicated to his descendants. Several of our cases are to the effect that this would be the case. *Middletown* v. *Lyme*, 5 Conn., 95; *Bethlehem* v. *Roxbury*, 20 id., 298. And if this be the law then the evidence that the grandfather of the pauper had a settlement in Pennsylvania would be equally decisive of the plaintiffs' case. But we do not intend to discuss this question. It is enough for this case that it does not appear that the grandfather had not a settlement even in this state.

We therefore advise the superior court to render judgment for the defendants.

In this opinion the other judges concurred.