## TOWN OF MORRIS *vs.* TOWN OF PLYMOUTH.

Under the statute (Gen. Stat., tit. 50, § 26,) which provides that any person having a legal settlement in this state, and acquiring a settlement in another state and afterwards returning to this state and becoming a pauper, shall be supported by the town where he had his last legal settlement in this state, the pauper has a settlement in such town for himself and his family.

ASSUMPSIT, for supplies furnished to a pauper claimed to belong to the defendant town ; brought to the superior court

in Litchfield county. The following statement of facts was agreed on by the parties.

Stephen Monson, Sen., having a legal settlement in the town of Plymouth, removed from that town to the state of Ohio, about the year 1832, and subsequently gained a settlement there, having taken with him his son Stephen Monson Jr., who also, in right of his father, acquired a settlement in Ohio, and who was born in Plymouth during his father's settlement there, and who at the time of removing to Ohio, and when his father gained a settlement there, was a minor aged about eight years. They remained in Ohio about three years, and then returned to Plymouth, where they lived several years. After his return from Ohio Stephen Monson, Jr., gained no new legal settlement in any town in this state in his own right, nor did his father during his minority, nor has any settlement other than the one prior to 1832 been gained by either of them in Plymouth, unless conferred by the statute law of Connecticut upon these facts. The pauper to whom the supplies were furnished was the minor daughter and legitimate issue of Stephen Monson, Jr., and of Mary his wife. Stephen Monson, Jr., was married to the said Mary in the year 1843, and before and at the time of the marriage she had a legal settlement in some town in this state other than the town of Plymouth.

The case was reserved upon these facts for the advice of this court.

*S. W. Kellogg* and *E. W. Seymour*, for the plaintiffs.

*G. C. Woodruff* and *Giddings*, for the defendants.

McCURDY, J. Laws in relation to the settlement of inhabitants are everywhere local regulations, and the liability of towns and others for their support depends upon the requirements of particular statutes. Generally it is of little consequence, as between the parties liable, what the rules of settlement may be, if they are equal and uniform in their operation and easily understood.

There were certain early decisions of the superior court of this state to the effect that a person who had a legal settlement here lost it upon gaining one in another state, and that upon his return the town from which he went and in which he had been settled was discharged from its obligation for his support. The last of these decisions was in the case of *Glastenbury* v. *Hebron,* at the Hartford superior court in February 1820. This principle was different from that adopted in other states, (*Townsend* v. *Billerica,* 10 Mass., 411 ; *Canton* v. *Bentley,* 11 id., 441,) and was not acceptable to the legal profession or the public. And in the revised statutes of 1821 we find the following section added to the pauper law. "When any person having a legal settlement in any town in this state shall remove out of the same and gain a legal settlement in another state, and shall afterwards return to this state and become poor and unable to support himself, the town where he had his last settlement shall be chargeable with his support." Revision of 1821, p. 371, sec. 7 ; Revision of 1866, p. 622, sec. 26. The question now is, what is the extent of the change intended to be made by this enactment.

The defendants insist that its effect is not to renew the pauper's settlement, but only to subject the town where he formerly belonged to his individual support without his becoming a legal inhabitant. We do not so understand it. In a place where a man has a right to live and be maintained and die and be buried, there he may well be said to be settled.

It is provided in our law, (Revision of 1866, p. 619, sec. 9,) that an inhabitant of another state having come into this state without having gained a settlement here, may be sent back to the state from whence he came, and after having been warned to depart may be punished for remaining. Now whatever may be said of this law in other instances, certainly in its application to a citizen of this state who has returned to his old home, it is inhuman, impracticable, and in many cases impossible. He may have come back from California. The added section to which we have referred allows him to remain and be supported at his former place of settlement. But what is to be done with his wife and children ? It would be

still more harsh that they should be removed, or separated from him and treated as paupers of the state. The policy of our law, in the interest of a Christian civilization, is to respect the domestic hearth, and to prevent as far as possible a compulsory scattering of households.

The terms "chargeable with support" are constantly used in the acts incorporating towns, and have uniformly been considered as importing a settlement of the person to be supported. This we believe is the first time they have been claimed to confer upon him a mere privilege without affecting his status. When the 7th section of the statute was enacted in 1792, the expression "the town that may be liable for his or their support," could have had no other meaning than as equivalent to the words "the place of his legal settlement." In the case of *Colchester* v. *East Lyme*, 18 Conn., 480, a person had resided in the district which, when incorporated, became the town of East Lyme, but was not settled there. He removed from the place just before the incorporation, and by the conditions of the charter, on his becoming a pauper, he was made "*chargeable* for his support" to that town. It was held that his *settlement* was there, and he communicated it to his *family*.

The case of *Middletown* v. *Lyme*, 5 Conn., 95, certainly sustains the defendant's views; but the decision is said by Judge Church in *Bethlem* v. *Roxbury*, 20 Conn., 298, to be inconsistent with the law of 1821. And it will be observed that in that case, as also in *Marlborough* v. *Sisson*, 23 Conn., 44, no reference is made to the statute; perhaps for the reason that its provisions are prospective, and the removals out of the state and back again in both those instances were long before the passage of the enactment. The point decided in *Bethlem* v. *Roxbury* was that an illegitimate child having a settlement in the state of New York did not take that of his mother here.

There is another ground upon which the plaintiff is entitled to recover. The minor child must be understood to be a member of her father's family depending upon him for support; and so the supplies for her must be considered to have

been furnished to him, according to the principle established in the case of *Lyme* v. *East Haddam*, 14 Conn., 394.

Judgment should be rendered for the plaintiff, and the superior court is so advised.

In this opinion the other judges concurred.