VREELAND, J.
This man, Martin Chapman, was in the town of Ellicottville, Chataraugus county, in the month of December, 1892, and either upon his own request or at the solicitation of the overseer of the poor of that town recived aid from such overseer as a pauper’. On December 23d of the same year the overseer of Ellicottville served a notice in writing in the usual form upon the overseer of the poor of the town of Otto that Chapman was settled-in Otto, and was being maintained by Ellicottville. On December 28th following, and within ten days, the overseer of Otto gave notice to the overseer of Ellicottville that he would contest before the county superintendent, on a day named, such alleged settlement of said pauper. The proceeding was tried and decided by the superintendent, who found that Chapman had not had a settlement in Ellicottville, but did not decide that he either- did or did not have a settlement in Otto, and awarded $10 costs to Ellicottville as the “prevailing party”; whereupon Otto appealed for a new trial, and upon such trial the parties stipulated that the evidence taken before the superintendent should be used- *441 and treated as the evidence on the trial before this court. Under these circumstances a review of the case by this court partakes rather of a review of questions of law than a new trial of facts. No claim was made before the superintendent that Chapman ever gained a settlement in Ellicottville, and no contention to that effect is indulged in here. This leaves as the only question to be disposed of the proposition whether or not the pauper had at the time of the trial a settlement in Otto, and from the evidence I am disposed to find that such was not the case, but that by gaining a settlement in the state of Pennsylvania he lost all claim to a settlement in any of the towns of this county, and could only regain such settlement in the usual way, by continuing to be a resident in some one town for one year. The evidence shows, and neither party disputes it, that Chapman lived in Bradford, Pa., for one year, about 1885, and again for two years, about 1887-88, and again for nearly a year, about 1890; that his family lived with him during the first year when he was in Pennsylvania, and that he voted there when a resident in that state. His settlement in Otto, if one was ever ac= quired, was gained prior to 1884, and prior to his first residence in Pennsylvania, The contention of Ellicottville is that the settlement of the pauper was in Otto, but Otto claims that since any residence or settlement was gained that he might have had in that town Chapman had acquired a new settlement in Pennsylvania, and had for that reason lost such settlement in Otto, and that he must again acquire a settlement in Otto before he would be chargeable to that town. It is not easy to determine the fact whether or not Chapman ever had a settlement in Otto, but that question becomes immaterial if the proposition that when he gained a settlement in Pennsylvania he lost any settlement which he had in this state, arid could not regain it in the usual way, be established to be sound law. No evidence was offered showing under what circumstances a person may gain a settlement in the state of Pennsylvania, and, in the absence of such proof, the laws-of that state in that respect must be presumed to be the same as the laws of our own. Monroe v. Douglass, 5 N. Y, 447; Savage v. O’Neil, 44 N. Y. 298; Hunt v. Johnson, Id. 27. A residence of one year with his family and again of two years, and his exercise, during such time, of his right to vote in some town of this-state, would gain for him a settlement here; and these facts, in the absence of evidence, must be held to have gained for him a settlement in Pennsylvania.
The question then arises, does a person who once gained a settlement in one of the towns of this state retain it for all the purposes for which a settlement may be made effective, so that he-may become chargeable to such town, although he may have subsequently gained a settlement in another county of the state or in another state? As the situation is presented here, Chapman had the-right to apply to the poor authorities where he was in Pennsylvania for relief, and they were required to comply. But if he also had a settlement at the same time in Otto, he could, at his option, return to *442 Otto, and the poor authorities there must also relieve his necessities. If this be the law, then a person having a settlement in the town of Salamanca might remove to Kansas, and reside there for fifty years, and gain a settlement there, then return to the former place, and, for all the purposes of the poor laws, still be held to have retained the former settlement. He might even bring with him a wife and flock of children, who were never residents of Salamanca, but who might, nevertheless, be held to take the former settlement of the husband and father. These are extreme cases, yet possible to arise under the theory that has long prevailed among the poor authorities in the state that a settlement once gained in any town in the state should continue until a settlement should be gained in some other town in the state, irrespective of the interval. This,, rule would amount, in effect, to holding a town responsible for the| support, in case of need, of all the persons ever gaining a settled ment elsewhere within the state. The law does not appear to up-ñ hold such a theory, but, on the contrary, such authorities as can be produced tend to establish a different doctrine. The present able superintendent of the poor.of Oattaragus county, in a well considered paper read before the convention of superintendents of the poor of the counties of the state held at Utica in August, 1892, .said upon this subject:
“A proper rule would be to disregard the former settlement, if one ever existed, and to treat the persons applying for relief as if they had never been in the county before, especially where they gained a new settlement in another county.”
I do not find that the courts of the state have ever decided the question involved here. In Stillwell v. Kennedy, 24 St. Rep. 140, which involved the settlement of Charles Ayers in the city of Elmira, N. Y, where the pauper had been for many years a resident of Kansas, with his parents, the court says: “It is very clear that by the removal of the mother and the son to Kansas they lost" their residence in this state, and became residents and citizens of Kansas.” Again the opinion states: “ When the mother became a, resident of the city of Elmira, and the boy followed her to that place, a residence and settlement were inflated.” While these dicta, under the circumstances, are not of much weight as authority, still they indicate to some extent the course of reasoning the court would adopt if the question were before it. The proposition appears to have been decided in Town of Middleton v. Town of Lyme, 5 Conn. 95, where the opinion says, upon quite a similar state of facts: “A person having a settlement in this state loses it by gaining a settlement in another state, and can retain a settlement here in no other manner than any other inhabitant of another state.” While this case was decided long ago, I do not find that the principle involved has been distinguished by latter cases. Of substantially the same import is North Yarmouth v. West Gardiner, decided by the supreme court of Maine in 1870, and reported in 4 Am. Rep. 379. The decision in 34 Conn. 273 (Town of Morris v. Town of Plymouth), was decided under a statute enacted after the decision in Town of Middleton v. Town of Lyme. In view of the facts and these authorities, I think it must be held that *443 Chapman had not, at the time of service of the notice by the overseer of Ellicottville upon the overseer of Otto, a settlement in the town of Otto, or in any other town in the county. I find as conclusion of law that the proceeding to charge the town of Otto with the support of said Martin Chapman be dismissed, with costs; such costs, under the stipulation of appellant’s attorney, not to exceed the sum of $20.
Proceedings dismissed, with costs.