# ELI MITCHELL V. A. S. BASS.

The Commissioner of the General Land Office is authorized by law (O. & W. Dig., 1274,) to issue a patent to an assignee upon his presenting a sufficient and properly authenticated chain of transfer from the original grantee, and is made the judge of the sufficiency of the transfers to enable him to pass the title from the State to the assignee of the certificate.

As between the State and the patentee, the patent is evidence of title in the latter. The decision of the commissioner is not conclusive of the genuineness of the assignment, against the grantee or any assignor of the certificate; but as between the patentee and strangers, the patent is at least *prima facie* evidence that the title is in the patentee and relieves him from the necessity of proving the assignment in an action of trespass to try title against a party who does not claim the certificate upon which the patent issued.

Applications for new trial on the ground of newly discovered evidence will be scrutinized with much strictness. They are addressed much to the discretion of the court, and where the court has refused such an application, the appellate court will not reverse, unless it shall appear that the court has not exercised its discretion according to the established rules of law and the principles of adjudged cases.

A party bringing himself within the principles of the adjudged cases, governing applications for new trial, is entitled to a new trial as a matter of right; unless it be apparent that the justice of the case has been attained.

If there be any doubt of the justice of the verdict, and new evidence conclusive in its character has been discovered, to refuse a new trial in such a case would be against justice and precedent,—by new evidence is meant some new and material fact, which has come to light since the trial.

The established doctrine of the common law is, that a conveyance of lands bounded on a public highway carries with it the fee to the centre of the road; such is the legal construction of a grant, unless the inference that it was so intended is rebutted by the terms of the grant. The owners of the land on each side go to the centre of the road, and they have the exclusive right in the soil subject to the right of passage in the public. Upon a discontinuance of the highway the soil and freehold revert to the owners of the land.

*Quære:* Does the foregoing doctrine of the common law apply to grants extended by the government of Coahuila and Texas to colonists in 1831?

*Quære:* Is the rule of the civil law in like cases the same as that of the common law? or, according to the former, does the soil of the public highway remain in the public?

Mitchell v. Bass.

APPEAL from Gonzales.    Tried below before the Hon. Fielding Jones.

Suit of trespass to try title by appellee against appellant, for thirty acres of land on the south side and adjoining the town of Gonzales, which appellant claimed by virtue of a patent issued to him by the State of Texas on the 4th day of April, 1856.

The defendant set up several defences, and specially pleaded that the land for which plaintiff instituted suit, and from which he seeks to evict defendant, was surveyed, laid out and set apart as a public highway on or about the year 1832, by order of Jose Maria Navarro, the officer in authority, who had legal power so to do, and that said public highway was located and set apart for the use of the public between labors 1 and 2, extending from the southern limits of the town of Gonzales to Guadalupe river, one hundred varas wide; and, therefore, avers that the right and title of said land was in the county of Gonzales; that the citizens have a right to the same as a public highway; that the county would be greatly damaged by being deprived of the same; prayed that the Chief Justice of the county of Gonzales be made party to the suit; that the interest and rights of the county be protected; that the said land lying between labors No. 1 and 2, extending from the southern limits of the town of Gonzales to the Guadalupe river, one hundred varas wide, be continued and set apart as a public highway, as the same had never been closed or discontinued by any court of competent jurisdiction, or by any one having legal authority.    Defendant further pleaded three, five, ten and twenty years limitation, and that if there be any land whatever between labors No. 1 and 2, the same was granted by the Mexican government to him and to others under whom he claimed; that he and they have had peaceable adverse possession of the same under said grants for more than twenty years, paying all taxes due thereon, cultivating, using and enjoying the same, and making improvements thereon, and he, therefore, pleads the said grant of said land, if there be any between said labors, in bar of plaintiff's claim.

On the trial the plaintiff read in evidence a patent from the State of Texas to him for thirty acres of land in the county of

Gonzales, on the south side and adjoining the town of Gonzales, granted "by virtue of an unconditional certificate No. 128, issued by the Board of Land Commissioners of Gonzales county, on the 9th day of December, 1854, and transferred to plaintiff on the 2nd day of January, 1855."

The defendant objected to the reading of this patent in evidence on the ground that the transfer of the certificate on which the patent issued was not proved; the objection was overruled, and defendant excepted.

The defendant read in evidence grants from the Mexican government to colonists for labors No. 1, 2, 3 and 4, extended in 1831, and adjoining the town of Gonzales; introduced maps of the town tract of Gonzales and surrounding surveys, the original field notes of labor No. 2, and the testimony of many witnesses in reference to these surveys.  Verdict and judgment for plaintiff.

On the trial of the motion for a new trial upon the ground of newly discovered evidence, the affidavits of several parties were read.  The facts upon which the motion for a new trial was based, are sufficiently shown in the opinion of the court.

It was in proof that the old "national road" did run between labors No. 1 and 2, and that it had been discontinued as a public highway for many years.

*Stewart & Mills*, for appellant.   1. We think the court erred in admitting the patent to Bass to the jury, without some evidence of the assignment of the certificate issued to Ruth, by Ruth to Bass; the objection was raised *in limine*, and the point reserved by bill of exceptions.

The 3d section of the Act of 1840 (Hart. Dig., art. 2522,) cannot, by any fair construction of the entire section, be held to mean or include "any bond or other instrument" not for the payment of money; it speaks of "discount," "payment," "due diligence to collect," &c.   The entire act treats of negotiable and unnegotiable instruments; and while the assignee may sue in his own name, and while the 5th section dispenses with the proof of assignments "of any of the aforesaid instruments," it must appear clear, the instruments intended, and, in the mind of the legislature, were, for the payment of money, absolutely or eventually, as in the case of

Durst & Swift, 11 Tex., 273. Bass was compelled, on objection being made, to prove the assignment of the Ruth certificate to himself, when he offered his patent, unless the law holds the assignment proved by statute.

Bass claimed to be the owner of the certificate; suppose he brought mandamus to force a patent; or to put the case stronger, suppose him to bring trespass to try title on his location and survey, can there be doubt but what he would be required to prove the assignment of the certificate from Ruth to himself (?) and this is the distinction we take, which was made by Wheeler, Justice, in Durst v. Swift, 11 Tex., 280. The consideration of the assignment is another thing, which we do not question.

It is no answer to say the Commissioner of the General Land Office determines the right of the assignee by inspection when he issues the patent: that is a ministerial, and not judicial act, and if conclusive, it could not be attacked in after years, even for forgery; proof before him does not, in the nature of things, furnish proof to the court and jury that the assignment was made; and this view is fortified, when we consider the easy and summary manner in which the proof can be furnished (as provided by Hart. Dig., art. 744,) by certified copies from the Land Office. Mesne assignments of a land claim become records in the Land Office in cases in which a patent is authorized to issue to the assignee of such claim. The court will not go, in its construction of this statute further, as to proof of assignment of certificates, than what was laid down in Mason v. McLaughlin, 16 Tex., 28; in that case, a copy of the record of the assignment from the Land Office was held proof. We submit, then, our objection on the trial was good.

*Parker & Miller*, for appellee. The motion for new trial was properly overruled. The affidavit of defendant does not set out by whom the newly discovered evidence was discovered, nor that defendant might not have discovered it before the trial by the use of due diligence, nor that he would be able to have this testimony by the next term of court. (3 Graham & Waterman on New Trials, 1071.) The evidence of the exhibits or affidavits is unsat-

isfactory and uncertain, and there is no probability that it would change the verdict upon another trial, (3 G. & W. on New Trial, 1043; 19 Texas, 96.)

This evidence is but cumulative, and, therefore, in admissible as ground for new trial, (3 G. & W. on New Trials, 1046 & 1047; Watts v. Johnson, et al., 4 Tex. Rep., 311; Vardeman v. Edwards, 21 Ib., 742; Burnley v. Rice, Adams & Co., Ib., 171.)

WHEELER, C. J. Two grounds are relied on for reversing the judgment—1st. That the court improperly admitted the patent in evidence without proof of the assignment of the certificate on which it issued. 2d. The refusal of the court to grant a new trial.

Upon the first point we think the ruling of the court was manifestly correct. The law authorized the commissioner of the land office to issue the patent to the assignee, upon his presenting a sufficient and properly authenticated chain of transfer from the original grantee down to himself. (O. &. W. Dig., art. 1274.) The commissioner was made the judge of the sufficiency of the transfer to enable him to pass the title from the State to the assignee of the certificate. As between the State and the patentee, the patent was certainly evidence of title in the latter. The decision of the commissioner would not be conclusive against the grantee, or any assignor of the certificate, of the genuineness of the assignment; but as between the patentee and strangers, the patent is at least *prima facie* evidence that the title is in the patentee, and relieves him of the necessity of proving the assignment in an action of trespass to try title against a party who does not claim under the certificate on which the patent issued.

The remaining question is not so free from difficulty. In deciding upon motions for new trials on the ground of newly discovered evidence, courts have found it necessary to lay down stringent rules, and to scrutinize such applications with much strictness, to prevent the mischiefs which would otherwise be produced. The losing party too often finds it an easy matter to obtain new evidence to supply former deficiencies. It is easy to claim the discovery of new evidence, when the claim is really unfounded, or the result of negligence in the first preparation; and it would

be of dangerous consequence to the rights of parties and the safe administration of justice, for the courts to grant new trials to parties merely to correct their own error, when they discovered where they were deficient, and when the requisite industry and vigilance would have supplied the deficiency in time. Such motions are received with careful scrutiny, and are held to address themselves very much to the discretion of the court; and where the court has refused an application made upon this ground, the appellate court will not reverse, unless it shall appear that the court below has not exercised its discretion according to the established rules of law. Yet, much as should be left to the discretion of the court, and reluctant as the appellate court may be to interfere with the exercise of that discretion, there are cases where the established rules of law and the principles of adjudged cases would be disregarded if a party was denied a new trial upon newly discovered evidence. The party who brings himself within the principles of such cases is entitled to a new trial as a matter of right, unless it be in those cases where it is apparent to the court that the justice of the case has been attained. Where there can be any doubt of the justice of the verdict, to refuse a new trial, when the party has really discovered new evidence of a conclusive tendency, would be against justice and precedent;—and by new evidence is meant proof of some new and material fact in the case, which has come to light since the trial. Is not such the evidence upon which a new trial was asked in this case? The witnesses believe they have discovered a new material, if not the most material call in the grant of the labor in controversy. They believe it to be the beginning corner of the survey, which had been the object of much unavailing search before the trial. It was evidently the great point of inquiry with the witnesses; but they had failed to find it, and some of them had made such diligent search as they thought warranted them in saying it could not be found. Yet, after the trial, the memory of one of the witnesses in support of the motion, refreshed perhaps by what he learned upon the trial, reminds him that the spot had been pointed out to him by an old citizen many years before, under circumstances

calculated to fix his attention; and on examination, he finds what he does not hesitate to say is the identical spot and corner of the land in controversy. It cannot be denied that this testimony, if obtained in time, might have had an important influence upon the finding of the jury; and it seems scarcely compatible with justice to deny the party the right of having it submitted to the jury before the case is finally and conclusively adjudged against him. We think it cannot be said that his failure to discover it before the trial was in consequence of any want of diligence on his part; for very great diligence appears to have been used in the search. If want of diligence can be imputed to the party in this case, it is difficult to conceive of a case where the requisite diligence could be shown. One witness, a practical surveyor, an old citizen conversant with the localities and the adjoining surveys, and others who seem to have felt an interest in the question, had made fruitless efforts to discover the corner, which they now believe they have found. It is not shown that there was any other living witness more likely to have made the discovery than some of those who were called by the defendant; and we cannot perceive what more effort the party was required to make, unless we were to hold that he was required, at all events, to have made the discovery, which he endeavored to make, but failed. That would be, in effect, to hold that this particular evidence could not come within the meaning of newly discovered evidence.

We do not regard it as liable to the objection that it is cumulative evidence. It is not proposed to multiply witnesses to any distinct fact or circumstance testified to by witnesses upon the trial; but it brings to light a new and independent truth, which the testimony upon the trial sought, but in vain, to prove. It is analogous to the case put by the court in Waller v. Graves, (20 Conn., 303,) where it was said—" Suppose a question on trial be, whether the note of a deceased person has been paid, and witnesses have been introduced, testifying to various facts conducing to prove such payment; and after a verdict for the plaintiff, the executor should discover a receipt or discharge in full, or had discovered that he could prove the deliberate confession of the plaintiff of the payment of the note—there could be no question in such a case that

a new trial should be granted, although the new facts go to prove the former ground of defence."

We think the present a stronger case for the granting of a new trial than the case cited by counsel from 2 Wash. C. C. R., 411, where Judge Washington granted a new trial, and many other adjudged cases which might be cited, of the granting of new trials upon newly discovered evidence, (1 Gra. on N. T., 490, et seq.; 3 Ib., ch. 12.) The new evidence relates to the proof of a fact by means so dissimilar from that used upon the trial, as to afford no ground for treating it as cumulative merely of the evidence upon the trial. It is of so decisive a nature, so material to the just decision of the matter in controversy, that the defendant ought not to be denied the right to have it submitted to the consideration of the jury, unless his failure heretofore has been in consequence of his own fault, and we cannot perceive that it is. It is desirable that there should be an end of litigation with as little delay and expense as possible consistently with the great end of litigation, a correct decision of causes according to their real merits; but it should always be sought in subordination to the great end to be attained. Though there had been two trials, this was the only application for a new trial on the part of the defendant; he had been successful upon the first trial. We think a new trial ought to have been granted. And although we have felt some hesitancy in pronouncing the refusal of it to be error, yet when we consider the nature of the controversy, and of the new evidence, and the very material bearing it may have upon the just decision of the case, we are constrained to conclude that the refusal of the application was the denial of a right to which the defendant was entitled according to established rules of law governing such applications, and consequently that it must be regarded as error, for which the judgment will be reversed.

Another question is suggested by the examination of the record, to which, as the case will be remanded for a new trial, it is thought proper to call the attention of the parties and their counsel. The original grants of labors one and two, call for the "national road" as the boundary between them. The plaintiff claims that the space designated for the road remained vacant public land after the

granting of the labors; and was subject to be appropriated by his certificate and patent. The controversy has been as to the existence of a vacancy between the labors. But if it be conceded that there was a space designated for a public highway, which has ceased to be used as such, it may be a question whether the space so designated become vacant upon its disuse by the public. The established doctrine of the common law is, that a conveyance of land bounded on a public highway, carries with it the fee to the centre of the road, as part and parcel of the grant. Such is the legal construction of the grant, unless the inference that it was so intended, is rebutted by the express terms of the grant. The owners of the land on each side, go to the centre of the road, and they have the exclusive right to the soil, subject to the right of passage in the public. Upon the discontinuance of the highway, the soil and freehold revert to the owner of the land. It is said that the rule of the civil law is different, and that by that law the soil of public highways is in the public. (3 Kent Com., 9th edit., 558, n.) And so it was decided by the Supreme Court of Louisiana in the case of Benthrop v. Bourg, (4 Martin's Rep., 97,) where the question was discussed with much learning and research. If such was the rule of law in the country at the time the labors in question were granted, the decision of the case would seem to depend upon the question which the parties have contested as to the existence of a space or vacancy between the labors. But as the question is one of importance sufficient, it is thought, to require a careful examination into the law, before it is taken for granted, it is thought proper to call attention to it, in order that counsel may give it such consideration as they may think proper. The judgment is reversed and the cause remanded.

Reversed and remanded.