

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-18-00036-CV

_____

LESTER J. STRAIT; KENNETH TAYLOR AND SHANNON TAYLOR, INDIVIDUALLY AND AS ASSIGNEES OF LESTER J. STRAIT, Appellants

V.

SAVANNAH COURT PARTNERSHIP; PSJ PROPERTIES, LTD.; V. PATRICK GRAY CUSTOM HOMES, INC.; HOME CREEK, L.L.C.; JMJ TORIAN PROPERTIES L.L.C.; CHEATHAM PARTNERS; MICHAEL P. AND SARAH NEUSTADT; JAMES D. AND VIVIAN S. COLLIER; HATWATER, L.L.C.; GAZIM IDOSKI; ATWOOD CUSTOM HOMES, INC.; LAURA HILL, IN HER OFFICIAL CAPACITY AS MAYOR OF THE CITY OF SOUTHLAKE; SHANA YELVERTON, IN HER OFFICIAL CAPACITY AS CITY MANAGER OF THE CITY OF SOUTHLAKE; SEAN RUCKEL; LENA RUCKEL; TINKU ABRAHAM; ASHA ABRAHAM; FIRST NATIONAL BANK; PROVIDENCE BANK; AND PLAINSCAPITAL BANK, Appellees

On Appeal from the 342nd District Court
Tarrant County, Texas
Trial Court No. 342-281936-15

Before Sudderth, C.J.; Gabriel and Pittman, JJ.
Opinion by Chief Justice Sudderth

## OPINION

## I.  Introduction

This case concerns a dispute over a strip of land abutting the western boundary of Appellants Kenneth and Shannon Taylor's property.  The Taylors argue that by applying common law presumptions to their chain of title, they own in fee simple a portion of land up to the centerline of a larger 60-foot wide strip of land (the Torian Lane Strip) that abuts their property (Abutting 30' Strip).  They additionally argue that pursuant to their chain of title, they own a private easement over all of the Torian Lane Strip and that there has been no merger of the separate estates.  Finally, the Taylors claim that the City of Southlake improperly filed for record a plat (Torian Place Plat) that did not reflect the Taylors' ownership interest in the Abutting 30' Strip or their easement rights across the Torian Lane Strip and that a residential real estate developer has now paved part of the Torian Lane Strip, ending the paved part in a cul-de-sac and cutting off access to the Torian Lane Strip and adjoining Dove Road from the Taylors' property.[1]

---

[1]Appellant Lester Strait, the Taylors' predecessor-in-interest, had originally sued Appellees Savannah Court Partnership; PSJ Properties Ltd.; V. Patrick Gray Custom Homes, Inc.; Home Creek, L.L.C.; JMJ Torian Properties, L.L.C.; Cheatham Partners; Michael P. and Sarah Neustadt; and James D. and Vivian S. Collier (Original Defendants) for trespass to try title, suit to quiet title, trespass, conspiracy, declaratory judgment, and injunctive relief.  While the underlying suit was pending, Strait conveyed his property to the Taylors and assigned his claims to them as well.  The Taylors then filed a petition in intervention and added as parties Appellees Hatwater, L.L.C.; Gazim Idoski; Atwood Custom Homes; Laura Hill, in her Official Capacity as Mayor of the City of Southlake; Shana Yelverton, in her Official Capacity as City

Both New and Original Defendants filed motions for summary judgment, and the Taylors filed a motion for partial summary judgment. In its summary judgment ruling, the trial court found that the Taylors did not own the Abutting 30' Strip; that Appellee JMJ Properties owned Lot 6, Block 2 in the Torian Place Plat, which includes the Abutting 30' Strip; and that the Taylors have an undefined right of passageway over the land referred to as Torian Lane. Additionally, the trial court awarded New Defendants $29,784.33 in attorney's fees. Original Defendants proceeded to a jury trial on the sole issue of their attorney's fees, and the jury awarded them $274,926.50 in attorney's fees. The trial court incorporated its summary judgment rulings and the jury verdict into a final judgment.

We reverse and remand.

## II. Background

**A.    The Taylors' Chain of Title to the North Half of Lot 15 of Meadowmere Acres Beginning with the Common Source of James Torian**

It is undisputed that the Taylors own a .5-acre lot in Southlake, Texas—also known as the "North ½ of Lot 15, Meadowmere Acres, [an] unrecorded [plat]" (the Property). The dispute centers on whether the Property includes with it the Abutting 30' Strip and whether the Taylors have a private easement over the entire Torian Lane

---

Manager of the City of Southlake; Sean Ruckel; Lena Ruckel; Tinku Abraham; Asha Abraham; First National Bank; Providence Bank; and PlainsCapital Bank (New Defendants).

3

Strip. The Property is shown in the shaded area below, with the Abutting 30' Strip

darkened and the Torian Lane Strip marked with a checkerboard pattern:



The Taylors trace their chain of title in the Property and Abutting 30' Strip and

their easement claim over all of the Torian Lane Strip as follows:

- In 1949, James Torian acquired by deed from Leona Tanner a 78.2 acre-tract of land in the F. Throop Survey (Torian Deed).

- In 1963, Torian executed a deed in favor of Cecil Marshall Yates (Yates Deed), conveying twelve tracts of his land, with six contiguous tracts on one side of a strip of land and six contiguous tracts on the other side of a strip of land.[2] Each of the twelve tracts was described by metes and

---

[2]Appellees do not dispute that a strip existed between the two tracts based on the metes and bounds description. They refer to this strip as the "Torian Retained

bounds and included a description of being either on the east or west side of "Torian Lane (unrecorded plat)." Each tract was also identified as a numbered lot, and Lot 14's description refers to the unrecorded plat as being "dated August 18, 1953, prepared by O.H. McKlyn, Dallas, Texas[.]" The Torian Lane Strip lies in between these two sets of six tracts. The Taylors assert, and Appellees do not appear to dispute, that based on the property description, the Torian Lane Strip is 60 feet wide for its entire length. A document purported to be the unrecorded plat is part of the summary judgment record and shows the Torian Lane Strip marked as "Torian Lane."

- In 1969, Yates executed a deed in favor of June Ely, Paula Jane Masten, and Hubert Chase, doing business as Torian Lane Properties (TLP Deed), conveying lots 6–11 and 14–17.

- In 1970, Ely, Masten, and Chase, doing business as Torian Lane Properties, executed a deed (Ely Deed) conveying the northern half of Lot 15 to Ely, including "all . . . appurtenances thereto." The Ely Deed referred to Torian Lane as a "public road" and described the western boundary of the Property as running along Torian Lane for 120 feet.

- In 1977, Ely executed a deed conveying the northern half of Lot 15 and "all . . . appurtenances thereto" to George C. Harbaugh and Teresita B. Harbaugh (Harbaugh Deed). The Harbaugh Deed also referred to Torian Lane as a "public road" and described the western boundary of the Property as running along Torian Lane for 120 feet. However, the Harbaugh Deed included the language, "SAVE & EXCEPT any portion lying in [a] road or roadway, public or private."

- In 1983, the Harbaughs executed a deed conveying two tracts of land, including the northern half of Lot 15 and all appurtenances thereto to Lester and Stacy Strait (Strait Deed). The Strait Deed contained the same references to Torian Lane as a public road, the western boundary as 120 feet along Torian Lane, and the "save and except" language.

---

Strip." Appellants call the strip "Torian Lane." We refer to it as the Torian Lane Strip.

5

- In 2016, Strait executed a deed conveying two tracts of land, including the northern half of Lot 15 and all appurtenances thereto, in favor of Shannon Louise Taylor and Kenneth L. Taylor, III (Taylor Deed). The Taylor Deed contained the same references to Torian Lane as a public road, the western boundary as 120 feet along Torian Lane, and the "save and except" language.

From this chain of title beginning with the 1963 Yates Deed as the alleged common source, the Taylors contend that they own not only the Property but also the Abutting 30' Strip in fee simple and that they own a defined private easement over the entire Torian Lane Strip. Appellees argue these same conveyances demonstrate that none of the Torian Lane Strip was ever conveyed in the Taylors' chain of title and was instead retained by Torian in the Yates Deed. JMJ Properties, the party that according to Original Defendants now owns the Abutting 30' Strip, traces its title from two 2016 quitclaim deeds from Torian's heirs.[3]

## B.  Savannah Court Partnership Develops the Torian Place Subdivision

In the early 2000s, Savannah Court began exploring the development of a residential subdivision to be known as "Torian Place." After acquiring some of the lots abutting the Torian Lane Strip, Savannah Court approached Strait to obtain his approval to complete Torian Lane[4] as part of the development, but he opposed the

---

[3]Based on our record, JMJ Properties appears to be affiliated with Savannah Court, the developer, from whom JMJ Properties obtained a deed to Lot 6, Block 2 of the Torian Place Plat.

[4]Savannah Court's principal, Kosse Maykus, testified that at the time Savannah Court began developing Torian Place, the Torian Lane Strip was "heavily wooded"

development. Savannah Court asserts that it presented offers to pave Torian Lane all the way to the Property or to turn the abutting Torian Lane into a hiking trail but that Strait rejected both offers.

Proceeding without Strait's approval, Savannah Court submitted several development proposals to the City of Southlake before eventually submitting a final plat proposal that accounted for the entire Torian Lane Strip. In 2015, Southlake approved the development, and in 2016 Mayor Laura Hill signed a revised plat—i.e., the Torian Place Plat. The Torian Place Plat provided for Torian Lane to be a 40-foot wide paved road with 10-foot sidewalk easements on each side of the road, beginning at Dove Road but ending in a cul-de-sac before reaching the Property's western boundary. The Torian Place Plat also designated the portion of the Torian Lane Strip abutting the west side of the Property as part of Lot 6, Block 2, a lot directly adjacent to the west side of the Torian Lane Strip.[5] The revised plat is depicted below with the Property, the Abutting 30' Strip, and the Torian Lane Strip darkened and the location of the cul-de-sac and paved part of Torian Lane shown:

---

with a six-foot creek running through it and dead trees lying across it, making Torian Lane "impassible" even in his truck.

[5]Savannah Court's surveyor who had prepared the plat to submit to the City of Southlake acknowledged that he did not know who owned the portion of the Torian Lane Strip that became part of Lot 6, Block 2, but that it had to be included in the plat submitted by Savannah Court for the City of Southlake to approve it.

7



The Torian Place Plat was filed for record but Strait did not sign or acknowledge it.

## C.  Strait Files the Underlying Lawsuit After Construction of the Cul-de-sac Cut Off Vehicular Access to the Property from Torian Lane

In the summer of 2015, JMJ Properties, Savannah Court, PSJ, V. Patrick Gray Custom Homes, Home Creek, and Cheatham Partners began construction on Torian Place.  As provided in the Torian Place Plat, Torian Lane was paved, ending in a cul-de-sac and effectively cutting off vehicular access to Torian Lane from the Property. Strait responded by filing the underlying lawsuit against Original Defendants.  Strait asserted claims for trespass to try title regarding the Abutting 30' Strip, suit to quiet title, injunctive relief, and a request for declaratory judgment that he had a valid easement over all of the Torian Lane Strip for the purpose of accessing his Property. He amended his petition twice, adding claims for trespass and conspiracy and a request for declaratory judgment that the Torian Place Plat was void.

8

Shortly after filing suit, Strait filed for record a notice of lis pendens in which his counsel represented that "[t]he case involves an action involving title or establishment of an interest in real property" and that Strait was "seeking reformation of a deed concerning interest conveyed in the Property which affects the titles held, if any, by the Defendants." In response, Original Defendants filed a motion to expunge the lis pendens and argued, in part, that the lis pendens was overbroad because it affected properties wholly unrelated to the title dispute in the Abutting 30' Strip and instead related only to Strait's claim of a private easement over the Torian Lane Strip. After substantial briefing and a hearing, the trial court signed an order granting the motion to expunge the lis pendens as to all of the affected properties except for Lot 6, Block 2, the lot owned by JMJ Properties.

Strait then executed a deed conveying the Property to the Taylors and an assignment of his claims to them as well. The Taylors filed a petition in intervention asserting the same causes of action against Original Defendants, but also adding New Defendants. Several months later, Strait filed a notice of nonsuit.

**D.  Trial Court Grants All Defendants' Motions for Summary Judgment, Denies Intervenors' Motion for Partial Summary Judgment, and Renders Final Judgment in Accordance with the Jury's Award of Attorney's Fees**

The parties filed competing motions for summary judgment. The trial court denied the Taylors' motion for partial summary judgment and granted Defendants' motions for summary judgment. In the order granting summary judgment, the trial court awarded New Defendants (excluding the Southlake officials) $29,784.33 in

9

attorney's fees from the Taylors but reserved the issue of Original Defendants' attorney's fees as the sole issue to be decided at a jury trial. At trial, the jury awarded Original Defendants $126,000 against Strait individually, $31,000 against the Taylors, and $118,000 against Strait and the Taylors jointly and severally.

The trial court rendered a final judgment incorporating the prior summary judgments and the jury verdict. The final judgment, excerpted below, included findings that JMJ Properties and not the Taylors owned the Abutting 30' Strip but that the Taylors did have an undefined right of passageway over all of the Torian Lane Strip by virtue of the Yates Deed:

> A revised plat of Torian Place, an addition to the City of Southlake, Texas, was filed as Document D2 I 6007588, Official Public Records of Tarrant County, Texas (the "Plat").
>
> The Plat dedicates to the public a street named Torian Lane. Subsequent to the filing of the Plat, Torian Lane was constructed as a concrete street, and was thereafter accepted by the City of Southlake as a city street ("Torian Lane").
>
> [The Taylors] are the owners of that property described in the deed filed as Document D216100706, Official Public Records of Tarrant County, Texas (the "Intervenor Property").
>
> *Lot 6, Block 2, Torian Place Addition, is owned by Defendant JMJ Torian Properties, LLC. [The Taylors] own no portion of said Lot 6, including the Subject Abutting Road Property as described in the pleadings of Intervenors.*
>
> By reason of a deed from James Torian to Cecil Marshall Yates, recorded at Volume 3878, Page 428, Deed Records of Tarrant County Texas, making reference to an unrecorded map or plat, *a right of passageway of an undefined width exists from Dove Road to the [Taylors'] Property.* Torian Lane satisfies that right of passageway from Dove Road to the northernmost point of Torian Lane, being also the southernmost point

of Lot 6, Block 2, Torian Place Addition. *[The Taylors] have a right of passageway across said Lot 6, between the western boundary of the [Taylors'] Property and the northernmost point of Torian Lane.* [Emphasis added.]

Appellants filed a motion for new trial, which the trial court denied. This appeal followed.[6]

## III. Issues on Appeal

Appellants raise five issues. First, the trial court erred by granting summary judgment on all of Appellants' claims. Second, the trial court improperly granted Appellees' summary judgment motion and denied Appellants' partial summary judgment motion because under common law presumptions, the Taylors own the Abutting 30' Strip in fee simple. Third, the trial court improperly granted Appellees' summary judgment motion and denied Appellants' partial summary judgment motion because the Taylors own a defined private easement over all of the Torian Lane Strip—not merely an undefined right of passageway. Fourth, summary judgment was improper because the Torian Place Plat is void or invalid. And fifth, the evidence is insufficient to support all of the attorney's fees award because the fees were not

---

[6]After trial, Strait filed a new lawsuit against Savannah Court, PSJ Properties, V. Patrick Gray Custom Homes, Home Creed, JMJ, Cheatham Partners, and the Southlake Defendants, in the 342nd District Court of Tarrant County, cause number 342-295089-17. The trial court granted summary judgment in favor of the defendants and Strait appealed to our court. (second appeal) (02-18-00203-CV). However, because the issues were related, we granted an unopposed motion to stay the second appeal pending the resolution of the instant appeal and ordered the parties to notify us within ten days of the resolution of the instant appeal whether they wanted to proceed with the second appeal or dismiss it.

11

properly segregated. Appellants ask that we reverse and render, and alternatively, that we reverse and remand if issues of material fact exist.

Analyzing the conveyances in the Taylors' chain of title beginning with the Yates Deed, as well as the other evidence in the summary judgment record, we conclude that the trial court erred by rendering judgment as to title in the Abutting 30' Strip because there is a gap in proof as to the Taylors' and JMJ Properties' chains of title, raising a fact issue that precluded summary judgment. We further conclude that the trial court erred by granting summary judgment on the Taylors' claims for suit to quiet title, trespass, and conspiracy, as well as their requests for declaratory judgment concerning the validity of the Torian Place Plat and their easement rights in the Torian Lane Strip because these claims were contingent on the resolution of title to the Abutting 30' Strip. In light of this conclusion, we reverse and remand.

## IV. Standard of Review

We review the trial court's decision to grant summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). To prevail on a summary judgment motion, the movant must demonstrate that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215–16 (Tex. 2003).

Generally, when both parties move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review both

12

parties' summary judgment evidence and determine all questions presented. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009); *see Myrad Props., Inc. v. LaSalle Bank Nat'l Ass'n*, 300 S.W.3d 746, 753 (Tex. 2009). The reviewing court may then (1) affirm the judgment, (2) reverse and render a judgment for the other side if appropriate, or (3) reverse and remand for further proceedings. *Mann Frankfort*, 289 S.W.3d at 848; *CU Lloyd's of Tex. v. Feldman*, 977 S.W.2d 568, 569 (Tex. 1998); *Drake Interiors, L.L.C. v. Thomas*, 433 S.W.3d 841, 847 (Tex. App.—Houston [14th Dist.] 2014, pet. denied).

## V. Title in the Abutting 30' Strip

### A. Introduction

Strait and the Taylors pleaded a trespass-to-try title action regarding the Abutting 30' Strip. Strait filed a "Proof of Common Source of Title" pursuant to rule of civil procedure 798. *See* Tex. R. Civ. P. 798. Strait listed seven instruments in this chain of title, which we label follows:

1. Torian Deed (1949);

2. Yates Deed (1963);

3. Torian Lane Dedication (1968);

4. TLP Deed (1969);

5. Ely Deed (1970); and

6. Harbaugh Deed (1977).

13

Appellee JMJ Properties filed a counterclaim for trespass-to-try title regarding the Abutting 30' Strip. JMJ Properties claimed title to the Abutting 30' Strip based on two quitclaim deeds from Torian's heirs.

Although the parties' summary judgment briefing focused on the 1963 Yates Deed as the "common source" of title, Strait's abstract of title actually began with the Torian Deed, and Appellees' motion for summary judgment recognized that "[a]ll parties trace their title to James Torian." Because both summary judgment motions hinge on the application of the common law presumptions that require a review of the status of Torian's ownership of surrounding property and because the summary judgment record references but omits at least one of Torian's deeds to adjoining property, we conclude this omission creates a fact issue and precludes a resolution of title in the Abutting 30' Strip.

## B.     The Parties' Positions

The Taylors contend that applying to the Yates Deed the common law presumption that a conveyance includes title to the centerline of the land underlying an abutting road, the Yates Deed conveyed fee simple to the Abutting 30' Strip to Yates. Thus, they argue that tracing their title from the Yates Deed, they hold title in fee simple to the Abutting 30' Strip as a matter of law. Alternatively, if this presumption does not apply, the Taylors contend that the strip-and-gore doctrine applies.

14

Appellees respond that the Abutting 30' Strip was not conveyed by the Yates Deed. Appellees contend that the Yates Deed actually conveyed only twelve separate tracts and that title to the Torian Lane Strip was reserved by James Torian. Thus, they argue, because the Yates Deed never conveyed any of the Torian Lane Strip, no subsequent conveyance in the Taylors' chain of title could convey any part of it.

Appellees further assert that the common law centerline presumption does not apply because Torian Lane was not in existence at the time of the Yates Deed and thus was not a public road. They argue that the strip-and-gore doctrine does not apply because the Yates Deed unambiguously reserved the Torian Lane Strip, and therefore cannot be construed to deviate from its plain language.

**C.      Strip-and-Gore: Title to Isolated, Relatively Small, Narrow Strips of Land Created by a Conveyance Presumptively Passes to the Grantee Unless Expressly Reserved in the Deed**

Almost eighty years ago, the supreme court acknowledged that situations involving "separate ownership of long narrow strips of land, distinct from the land adjoining on each side," are fraught with the potential for disputes and lawsuits. *Cantley v. Gulf Prod. Co.*, 143 S.W.2d 912, 915 (Tex. 1940). Thus, the supreme court recognized a presumption arising out of a public policy to alleviate debate over ownership of these relatively insignificant tracts of land:

> To avoid this source of contention, it is presumed that a grantor has no intention of reserving a fee in a narrow strip of land adjoining the land conveyed when it ceases to be of use to him, unless such fee is clearly reserved. The reason for the rule is obvious. Where it appears that a grantor has conveyed all land owned by him adjoining a narrow strip of

15

land that has ceased to be of any benefit or importance to him, the presumption is that the grantor intended to include such strip in such conveyance; unless it clearly appears in the deed, by plain and specific language, that the grantor intended to reserve the strip

*Id.* This presumption is known as the strip-and-gore doctrine. *See Crawford v. XTO Energy, Inc.*, 509 S.W.3d 906, 909 (Tex. 2017); *Green v. Chesapeake Expl., L.L.C.*, No. 02-17-00405-CV, 2018 WL 6565790, at *3 (Tex. App.—Fort Worth Dec. 13, 2018, no pet.) (mem. op.); *TH Invs., Inc. v. Kirby Inland Marine, L.P.*, 218 S.W.3d 173, 210 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) ("The strip-and-gore doctrine is intended to avoid litigation by presuming that 'a grantor has no intention of reserving a fee in a narrow strip of land *adjoining the land conveyed* when it ceases to be of use to him, unless such fee is clearly reserved.'" (quoting *Cantley*)); *see also Estate of Smith v. Spinelli*, 216 P.3d 524, 533 (Alaska 2009) (recognizing that the strip-and-gore doctrine is "primarily associated with Texas").

"Application of the strip-and-gore doctrine is highly policy-driven: it discourages title disputes and prolonged litigation—providing certainty in land titles—and encourages the use and development of real property." *Green*, 2018 WL 6565790, at *3. Relying on supreme court precedent, our court has recently clarified the application of the strip-and-gore doctrine by rejecting a line of intermediate appellate court cases that had held that the strip-and-gore doctrine does not apply when a deed contained a specific metes and bounds description that did not include the disputed strip. *See id.* at *4–5.

16

Therefore, Texas public policy requires that we read a deed conveying land that does not identify but nevertheless creates a relatively narrow strip of land no longer useful to the grantor as conveying title in the strip to the grantee unless the grantor expressly and affirmatively reserves title to the strip in the deed. *See Crawford*, 509 S.W.3d at 909; *Cantley*, 143 S.W.2d at 915; *Green*, 2018 WL 6565790, at *3.

**D.    Centerline Presumption:  Title to Half of an Abutting Road or Highway Presumptively Passes to the Grantee, Subject to Access Rights, Unless Expressly and Unequivocally Reserved in a Deed**

Another, more specific, longstanding rule often associated with the strip-and-gore doctrine provides that a conveyance of land abutting a road or public highway presumptively conveys ownership to the center of the abutting road or highway[7]:

> The established doctrine of the common law is that a conveyance of land bounded on a public highway carries with it the fee to the center of the road as part and parcel of the grant.  Such is the legal construction of the grant, unless the inference that it was so intended is rebutted by the express terms of the grant.  The owners of the land on each side go to the center of the road, and they have the exclusive right to the soil, subject to the right of passage in the public.

*Mitchell v. Bass*, 26 Tex. 372, 380 (1862); *see City of Fort Worth v. Sw. Magazine*, 358 S.W.2d 139, 141 (Tex. App.—Fort Worth 1962, writ ref'd n.r.e.) ("As a general rule the owner of a lot or a tract of land abutting upon a street acquires the fee to the center of the street subject only to the easement existing in favor of the public.").

---

[7] *See, e.g.*, *Green*, 2018 WL 6565790, at *5 (identifying the centerline presumption as "a variant of the strip–and–gore doctrine"); *Escondido Servs., LLC v. VKM Holdings, LP*, 321 S.W.3d 102, 106 (Tex. App.—Eastland 2010, no pet.) (listing the strip-and-gore doctrine as a doctrine used by courts to justify the centerline presumption).

Like the strip-and-gore doctrine, this centerline presumption "applies even if the description of the land in the deed or field notes terminates at the street, public highway, or railroad right-of-way, unless a contrary intention is expressed in plain and unequivocal terms." *Moore v. Energy States, Inc.*, 71 S.W.3d 796, 799 (Tex. App.—Eastland 2002, pet. denied). Moreover, the centerline presumption applies when an abutting road is referenced in a deed or plat, even if the road was not yet being used. *See Cantley*, 143 S.W.2d at 916 (explaining that with regard to "the presumption that it was the intention of the grantors to convey such narrow strip to the grantees with the other land adjoining same, *we do not think that it affects the rule*, so far as the title to the strip is concerned, *if the road was never used* or if it was abandoned" (emphasis added)); *see, e.g.*, *Margolin v. Gatto*, 70 A.D.3d 1014, 1015 (N.Y. App. Div. 2010) ("[T]he fact that a dedicated 'paper' road has ceased to be a public highway . . . does not preclude operation of the long-standing common-law presumption that, 'when lands described in a conveyance are bounded by a street, highway or road, the conveyance is deemed to pass title to the center of the abutting roadway unless the conveyance reflects an intent of the grantor to limit the grant to the edge of the road.'" (quoting *Bashaw v. Clark*, 267 A.D.2d 681, 685 (N.Y. App. Div. 1999))).

Therefore, we generally read a deed conveying land that abuts a road or highway as passing title to the centerline of the abutting road or highway along with the property conveyed unless the grantor expressly and unequivocally reserved part of the road in the deed. *See Cantley*, 143 S.W.2d at 916; *Moore*, 71 S.W.3d at 799.

## E.  The Yates Deed (1963)

When Torian executed the Yates Deed, he conveyed to Yates twelve tracts of land, with six contiguous tracts on one side of a strip of land and six contiguous tracts on the other side of that same strip of land.  That is, the legal description of the land conveyed excluded a 60-foot wide strip of land running between the twelve tracts.  The Yates Deed also referenced an unrecorded plat.  A plat purported to be the unrecorded plat is part of the summary judgment record and identifies the Torian Lane Strip as "Torian Lane."  The shaded areas below depict the two tracts conveyed in the Yates Deed[8]:

---

[8]The Abutting 30' Strip is darkened.

19



### 1. Fact issues precludes application of strip and gore

As mentioned above, the parties agree about the existence of a long and narrow strip between the two tracts as a result of the Yates Deed's legal description although they use different nomenclature to identify it. But in the context of strip and gore, the evidence creates a fact issue as to whether the long, narrow strip between the two tracts was isolated from Torian's adjoining property at the time of the Yates Deed or could instead could be more accurately described as a long narrow arm or appendage. That is, the evidence shows that the Torian Lane Strip may have remained attached to, rather than isolated from, property that Torian retained. Based on the records

20

before us, it appears that under the Yates Deed, Torian did not convey all of the surrounding land he owned leaving just the Torian Lane Strip. Rather, he still owned part of the 78.2 acres he had acquired under the Torian Deed, a small section of which was still connected to the Torian Lane Strip by a road labeled Lakeview Place that adjoined the property retained by Torian. This is evidenced by a copy of the unrecorded plat in the record, which references an instrument of conveyance of land west of the land in the Yates Deed, executed by Torian in favor of "June Ely et al ([Vol] 4795[, Page] 965)."[9]

As evidenced by their discussion of the Yates Deed in their summary-judgment briefing, Appellants recognize that Torian had retained property to the north and west of the two tracts of land he conveyed to Yates, and that he could have used Torian Lane to access his retained property: "On the north, Torian Lane opens onto Lakeview Place, another road located on other property within Meadowmere Acres *which provided access to Dove Road for property retained by Torian.*" [Emphasis added.]

---

[9]Although Appellees objected to the plat as summary judgment evidence, the objection was not preserved because they did not obtain a ruling on it. *See Capitol Wireless, LP v. XTO Energy, Inc.*, No. 02-12-00351-CV, 2014 WL 3696084, at *5 (Tex. App.—Fort Worth July 24, 2014, no pet.) (mem. op.). Thus, we consider the unrecorded plat in our analysis.

The unrecorded plat, that was in Appellants' surveyor's file, along with the handwritten notes, are some evidence that the adjoining property deed was recorded after the Yates Deed and Torian Lane Dedication but before the Ely Deed because the volume and page numbers fall in between the volume and page numbers of those instruments. *See* Tex. Prop. Code Ann. § 11.004(a) (requiring clerks to record instruments relating to the same property in the order the instruments are filed).

21

Below is an approximate visual representation of the plat notes about Torian's land not included in the Yates Deed that he had obtained via the Torian Deed. A portion of the retained land is crosshatched:



Therefore, based on this evidence, we cannot apply strip and gore as a matter of law because it appears that Torian did not convey *all* of his land to Yates, leaving Torian Lane as an isolated, small strip. There is some evidence that he retained his property north and west that he had obtained in the Torian Deed, property that was still attached to the Torian Lane Strip, albeit at a narrow juncture. Therefore, neither

22

the Taylors nor Original Defendants conclusively proved title in either the Abutting 30' Strip or the Torian Lane Strip under the doctrine of strip and gore.

### 2. Torian files an instrument to dedicate Torian Lane

In 1968, Torian filed an instrument (Torian Lane Dedication), dedicating that the Torian Lane Strip should be known as Torian Lane and dedicating the use of the street to the abutting landowners and to the public. In describing the land dedicated, the Torian Lane Dedication referred to the unrecorded plat. The shaded area below depicts the land described in the instrument[10]:



---

[10]The Abutting 30' Strip is darkened.

23

Whether the Torian Lane Dedication effectively dedicated the Torian Lane Strip to the public is another question we cannot resolve on this record. Based on this record, unresolved fact issues remain concerning the Torian Lane Dedication, namely, whether Torian retained ownership of the Torian Lane Strip after the Yates Deed such that he could have dedicated it to the public. *See Gutierrez v. County of Zapata*, 951 S.W.2d 831, 839 (Tex. App.—San Antonio 1997, no writ) ("A valid dedication can only be made by the owner in fee.").

But even assuming without deciding that the dedication was effective, the extent of the Torian Lane Dedication is not clear from our record. That is, the Torian Lane Dedication may not have divested Torian of fee title to the Torian Lane Strip but simply granted the public an easement over Torian Lane. *Cf. City of Richland Hills v. Bertelsen*, 724 S.W.2d 428, 431 (Tex. App.—Fort Worth 1987, no writ) ("Acceptance of the dedication by the city did not extinguish the fee in land, which remains in the proprietor. The public only obtained an easement in the land dedicated for its use.") (internal citation omitted). In *City of Richland Hills*, our court approvingly quoted from a treatise, which affirmed the rule that

> [a]n owner of land who dedicates it to the public generally retains the ownership of the fee and grants only an easement, and he can continue to use the property in any way he sees fit so long as the use is not inconsistent with the public use for which the property was dedicated, or convey or transfer to another such right or title as remains in himself, subject to the public rights.

24

*Id.* (quoting 11 McQuillin, *Municipal Corporations,* sec. 33.66 (1983)). Thus, even if the Torian Lane Dedication effectively granted the public an easement over Torian Lane, Torian would still have been free to convey, transfer, or retain his interest in the Torian Lane Strip in the instrument of conveyance we described above that is not in our record.

Thus, based on this record, unresolved fact issues remain concerning the Torian Lane Dedication, namely, whether Torian retained ownership of the Torian Lane Strip after the Yates Deed such that he could have dedicated it to the public. *See Viscardi v. Pajestka*, 576 S.W.2d 16, 19 (Tex. 1978) (holding whether public right of way has been acquired by dedication is generally question of fact); *Broussard v. Jablecki*, 792 S.W.2d 535, 537 (Tex. App.—Houston [1st Dist.] 1990, no writ) ("Whether a road has been dedicated to public use is generally a fact question.").

### 3. There is also a fact issue regarding application of the centerline presumption

The application of the centerline presumption turns on what happened next, and on this point the record is silent. When Torian conveyed the remainder of his adjoining property, it is possible that title to the centerline of Torian Lane could have vested in the abutting lot owners but this would depend on whether Torian expressly reserved title to the Torian Lane Strip in the conveyance. Nothing in the summary judgment evidence answers this question. Thus, a fact issue remains which precludes summary judgment.

25

In other words, from this record, we cannot determine whether the centerline presumption applies because, as explained above, the Torian Deed and unrecorded plat indicate that Torian may have retained adjoining property. But this conveying instrument, demonstrating exactly when and what Torian conveyed with respect to the adjoining property and whether he expressly retained any interest in the Torian Lane Strip, is not in our record. Therefore, we cannot know if or when title to the centerline of the Torian Lane Strip would have vested in the adjoining owners.

Thus, neither the Taylors nor JMJ Properties have shown superior title in the Abutting 30' Strip as a matter of law.[11] Therefore, we hold that the trial court erred by granting final summary judgment that JMJ Properties has title to the Abutting 30' Strip.

### 4.    There are fact issues on all of the Taylors' remaining claims

Because the Taylors' claims for suit to quiet title, trespass, and conspiracy and their requests for declaratory judgment that the Torian Place Plat is void and that they own a private easement over the entire Torian Lane Strip are all dependent on the

---

[11]Nor do JMJ Properties' quitclaim deeds conclusively establish title in the Abutting 30' Strip because "[a] quitclaim deed does not establish title in the person holding the deed, but merely passes whatever right, title, or interest the grantor has in the property." *Martinez v. Mangrum*, No. 02-13-00126-CV, 2014 WL 1389566, at *5 (Tex. App.—Fort Worth Apr. 10, 2014, no pet.) (mem. op.); *Rogers v. Ricane Enters., Inc.*, 884 S.W.2d 763, 769 (Tex. 1994) (holding in trespass to try title action, a quitclaim deed does not establish title); *Adamson v. Doornbos*, 587 S.W.2d 445, 448 (Tex. App.—Beaumont 1979, no writ) (holding plaintiff failed to prove title from common source when originating deed was quitclaim deed).

resolution of the trespass-to-try title claim in the Abutting 30' Strip, we hold the trial court erred by granting summary judgment as to these claims as well. *See Davis v. Gale*, 330 S.W.2d 610, 612–13 (Tex. 1960) (reversing trespass-to-try title judgment and remanding for new trial to better serve "the ends of justice" and "to give parties an opportunity to supply additional evidence and to amend pleadings"); *El Paso Prod. Oil & Gas USA L.P. v. Sellers*, No. 13-10-00439-CV, 2012 WL 3041327, at *4–5 (Tex. App.—Corpus Christi–Edinburg July 26, 2012, pet. denied) (mem. op.) (reversing title determination after parties had filed competing motions for summary judgment because "neither side conclusively proved nor conclusively negated as a matter of law that [the plaintiff] held superior title from a common source" and remanding because "[q]uestions remain unanswered by the fact finder").

Accordingly, we sustain Appellants' first, second, third, and fourth issues.

## VI. Attorney's Fees

Because we reverse the summary judgment, we sustain Appellants' fifth issue and we reverse the award of attorney's fees. *See AAA Free Move Ministorage, LLC v. OIS Invs., Inc.*, 419 S.W.3d 522, 530 (Tex. App.—San Antonio 2013, pet. denied) (reversing award of attorney's fees when court had reversed underlying summary judgment).

## VII.  Conclusion

Having sustained Appellants' five issues, we reverse the entire judgment, including all of the underlying summary judgment rulings, and remand for further proceedings consistent with this opinion.

/s/ Bonnie Sudderth
Bonnie Sudderth
Chief Justice

Delivered:  May 16, 2019