**DISSENT; Opinion Filed November 18, 2022**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

_____

### No. 05-21-00708-CV
_____

## MAX NELSON AND CAROLYN NELSON, AS CO-GUARDIANS OF MATTHEW NELSON, Appellants
## V.
## CITY OF PLANO, Appellee

**On Appeal from the 219th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 219-02317-2020**

## DISSENTING OPINION
Before Justices Schenck, Smith, and Garcia
Opinion by Justice Schenck

While my colleagues' opinion takes a reasonable view of the decision in

*University of Texas v. Garner*, 595 S.W.3d 645 (Tex. 2019) (per curiam), I find

myself unable to join in it. Rather, because I read *Garner* and Chapter 75 of Civil

Practice and Remedies Code more narrowly, I must dissent.[1]

_____

[1]In addition to my dissent to the judgment, I include this footnote to express my objection to the reconstitution of this panel after the decision in this case. Our rules oblige the court to determine at the outset whether a case will be decided by a panel or the en banc court and where two or more justices "agree on the judgment[,]" the "panel opinion constitutes the court's opinion, and the court must render judgment in accordance with the panel opinion." *See* TEX. R. APP. P. 41.1; *id.* 47.2 (requiring names of participating justices be noted on all written opinions or orders of court or panel of court). After an opinion has circulated

The City's plea to the jurisdiction challenges the trial court's authority to adjudicate the claims in this case. Under controlling authority, the waiver of immunity necessary to sustain that jurisdiction is limited to the substantive extent of liability on the merits. *See Garner*, 595 S.W.3d at 648. We are constrained, therefore, to consider whether the claim *might* prevail on the pleaded facts, taking all evidence favorable to the plaintiff as true. *See Sampson v. Univ. of Tex. at Austin*, 500 S.W.3d 380, 384 (Tex. 2016).

The accident giving rise to this case is alleged to have taken place in and along the public right of way on a sidewalk along West 15th Street, as a parking lot of a 7-Eleven store meets the street. The City urges that the accident occurred on a City sidewalk. Crediting that assertion as controlling at this stage, we are left with two controlling questions posed by the so-called Recreational Use Statute in Chapter 75:

---

in an argued case, no other justice must join it, but at least two must concur in the judgment. *Id.* 41.1. It is *only* where a panel member cannot "participate" in the decision may a substitution take place. *Id.*

Justice Osborne authored the opinion here and approved of the judgment it dictates prior to her resignation, as did another justice. She therefore participated. As the Clerk, not the justices, communicates the Court's opinion to the parties, there was in fact no further "participation" permitted, apart from the unrealized potential for her to withdraw her assent to the judgment. Nevertheless, after Justice Osborne's departure, a majority of the Court voted to substitute other sitting justices or visiting justices on any case on which Justice Osborne was originally assigned to the panel—regardless of whether she had participated or communicated her approval of the judgment to the Clerk prior to her resignation. In this case, the substitution, while improper in my view, does not alter the judgment and is disclosed to the parties.

I have previously and broadly expressed my view that this Court's practices concerning the assignment and decision of cases do not comport with my understanding of the rules of procedure or the due process rights of litigants to a decision derived by random processes. *See, e.g.*, *Steward Health Care Sys. LLC v. Saidara*, 633 S.W.3d 120, 153–154, 164 (Tex. App.—Dallas 2021, no pet.) (interpreting rule 41.1 to provide that once two or more justices have agreed on judgment, case is "decided" and objecting to substitution of new justice after original panel member participated in opinion and judgment not released before expiration of original panel member's term of office).

did the accident take place on property within its reach and, if so, whether the activity taking place there amounts to recreation that would, in the absence of explicit permission, require the user to be treated as a presumptive trespasser when setting the relevant standard of care? As to the latter question, the statute sets forth a list of activities that may (or perhaps must) amount to recreation. *See* TEX. CIV. PRAC. & REM. CODE § 75.001(3). "Bicycling" is plainly among them. *See id.* § 75.001(3)(M). The statute does not attempt to define "owns" or "operates" or to discern between uses that may (or must) amount to "recreation" other than to include a non-exclusive list of some uses "such as . . . bicycling" and "pleasure driving," among many others. *See id.* § 75.001. Where government owned, maintained, or operated "premises" are concerned, still further uses are included in the definition of "recreation." *See id.* § 75.002(e).

I see this case as posing two questions: did this accident take place on real property that is either "owned," "leased," or "occupied" by the City within the natural and plain contemplation of meaning of "owned, operated, or maintained" by the City within the meaning of 75.002(f) in the first instance, so as to trigger the next question of what use, recreational *vel non*, was involved here. *See id.* § 75.002(f). As to the latter question, *Garner* surely answered that the use of a bicycle could amount to recreation—though not necessarily invariably. *See Garner*, 595 S.W.3d at 650. As to the former question, *Garner* is even less informative, as the accident in *Garner* clearly took place on land owned in fee by the governmental defendant,

–3–

as Garner's injury took place as she rode her bicycle through a state university-owned residential complex on her way to a bike trail. *See id.* at 647–48.

In this case, according to the City's recounting, a reasonable fact-finder could conclude that the accident took place within the dedicated public right of way or a parking lot adjacent to it. The law governing "ownership" of the right of way is not helpful to the City's position here. Generally, when land is platted, the fee owner retains his ownership over the land. *See Strait v. Savannah Court P'ship*, 576 S.W.3d 802, 813 (Tex. App.—Fort Worth 2019, pet. denied) (quoting *Mitchell v. Bass*, 26 Tex. 372, 380 (1862)) ("The owners of the land on each side go to the center of the road, and they have the exclusive right to the soil, subject to the right of passage in the public."). The public is conferred a general right of use akin to an easement for all purposes typically associated with a right of way, which the state, rather than the municipality, holds in trust. *See id.* The public right to make that use cannot be denied, bartered, or withheld by the municipality. *See Kirby Lake Dev., Ltd. v. Clear Lake City Water Auth.*, 320 S.W.3d 829, 843 (Tex. 2010) ("Certain powers are conferred on government entities 'for public purposes, and can neither be delegated nor bartered away'"); *see also Sw. Bell Tele. Co. v. City of El Paso*, 346 F.3d 541, 548 (5th Cir. 2003) (neither state nor its political subdivisions retain authority to restrict or deny use of public right of way for all transportation

purposes). In all events, there is no evidence that the City "owned" the land at issue here in fee, as was apparently the case in *Garner*.[2]

While a city might argue that it "operates" or "maintains" the roads generally, so as to trigger the liability limits found in section 75.002(f), there is no evidence in this case that the City, as opposed to the state or the landowner, "operated" or "maintained" the road at issue, much less the adjacent sidewalk or parking lot where the accident apparently occurred. At a minimum, I would find at least a fact question to obtain on our current record.

But, even assuming that either the statute or our record here could reach to routine collisions adjacent to (or even in) the public right of way as a general matter, the notion that use of that area by the public for whom it was dedicated for transportation is perforce "recreational" because it occurs on a bicycle, as happened to be the case in *Garner*, seems unwarranted by the statutory text or the facts in *Garner*. The plaintiff in *Garner* was traveling by bicycle to a trail head in a park where she planned to meet a friend to "ride the trial." *See Garner*, 595 S.W.3d at 648. In order to reach the trail, the plaintiff used a road within a state university-owned apartment complex. *See id.* at 647.

---

[2] To be direct, the plaintiff here did not need any permission from anyone to travel on a public right of way, unlike the plaintiff in *Garner* or any case cited as support therein. *See Garner*, 595 S.W.3d at 650 n.4 (citing *City of Bellmead v. Torres*, 89 S.W.3d 611, 614 (Tex. 2002); *City of San Antonio v. Peralta*, 476 S.W.3d 653, 658 (Tex. App.—San Antonio, 2015, no pet.)).

In this case, by contrast, we are told that Mr. Nelson is an individual with cognitive challenges who was using the public right of way and his bicycle for basic transportation to purchase groceries, presumably because he does not have the ability to use a car. I reject a reading of *Garner* or the statute that would treat this or every use of as a bicycle as "recreation."[3] I take it as obvious that minors, adults of limited means or functionality, ecologists, and countless others will use bicycles for non-recreational purposes. Until relatively recently, Swiss soldiers were expected to report to war with their own firearms and on bicycles.[4]

I will also note that the definition of "recreation" reaches to use based on its apparent purpose, "such as" bicycling and "pleasure driving." *See* CIV. PRAC. & REM. § 75.001(3)(H). Meanwhile, the TTCA waives sovereign immunity for general negligence claims in all "accidents involving motor driven vehicles" virtually all of which would take place in the public rights of way. *Id.* § 101.021(1)(A). That general waiver cannot be meant to apply only in yards and gardens or "pleasureless" automobile journeys. While the City accepts that "pleasure" driving indicates an intention to focus on the particular subjective

---

[3] The City relies on a footnote to *Garner* to argue that the court rejected the idea there was any legal distinction between bicycling for transportation and bicycling for recreation. *See Garner*, 595 S.W.3d at 650 n.4. However, the *Garner* court was not presented with the question presented here of whether the legislature may act to limit the State's liability for injuries sustained on a public right of way. Thus, any statement purporting to do so would be dicta. Moreover, any such statement would be in conflict with long-standing law. *See Kirby Lake Dev.*, 320 S.W.3d at 843; *see also Sw. Bell*, 346 F.3d at 548.

[4] BBC News | EUROPE | End of road for Swiss army cyclists, *available at* http://news.bbc.co.uk/2/hi/europe/1325485.stm (last visited Nov. 17, 2022).

intended use of property, it reads that purpose as evident only with respect to driving, suggesting the lack of the modifier "pleasure" implies a different legislative intent with respect to bicycles. I disagree. Having already constrained the reach of the entire rule to "recreation," there would have been no need of further textual modification with respect to either mode of transportation. If anything, declaring "pleasure" driving to be within the possible recreational uses of another's property seems more consistent with the idea that general transportation uses of the public right of way were generally outside of the legislature's intended sweep, regardless of the mode that might be involved.

In all events, I disagree with the majority's conclusion to limit the liability of the City where a person who happened to commute by bicycle rather than car on a public right of way and was injured in a collision with a truck driven by the City's own employees.

Accordingly, I dissent.

/David J. Schenck/

DAVID J. SCHENCK
JUSTICE

210708DF.P05