

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-23-00200-CV
_____

SAVANNAH COURT PARTNERSHIP; PSJ PROPERTIES, LTD.; V. PATRICK
GRAY CUSTOM HOMES, INC.; HOME CREEK LLC; AND
JMJ TORIAN PROPERTIES, L.L.C., Appellants

V.

LESTER J. STRAIT, KENNETH TAYLOR, AND SHANNON TAYLOR,
Appellees

---

On Appeal from the 342nd District Court
Tarrant County, Texas
Trial Court No. 342-281936-15

---

Before Sudderth, C.J.; Kerr and Wallach, JJ.
Memorandum Opinion by Chief Justice Sudderth

**MEMORANDUM OPINION**

This case involves a dispute over a piece of real property—a segment of undeveloped land (the Torian Lane Strip) that, when this lawsuit began, was being reconfigured (partially into a new plot known as Lot 6 and partially into a paved road and cul-de-sac) as part of a subdivision development project. Appellee Lester J. Strait owned land that abutted the northern segment of the Torian Lane Strip, and he claimed title to a portion of it and an easement across the rest of it.

Strait sued the entities that had prepared the plat for and were developing the new subdivision: Appellants Savannah Court Partnership; PSJ Properties, Ltd.; V. Patrick Gray Custom Homes, Inc.; Home Creek, L.L.C.; and JMJ Torian Properties, L.L.C. (collectively, the Developers). And after Strait conveyed a portion of his property to Appellees Kenneth and Shannon Taylor, the Taylors intervened and asserted claims against the Developers as well. Although the parties' causes of action evolved as the litigation progressed, in the end, the Taylors sought declaratory judgments against the Developers to recognize (1) that the plat was invalid to the extent that its depiction of Lot 6 clouded their title to a portion of the Torian Lane Strip and (2) that they had an easement over the remainder of the Torian Lane Strip that overlapped with Lot 6.

When the lawsuit began, only JMJ owned property affected by the suit. But in 2019, JMJ conveyed its interest in Lot 6 to a third party. Nonetheless, when the trial court ultimately entered the Taylors' requested summary declaratory judgments in

2

2022, it entered those judgments only as to Lot 6, in which none of the Developers had an interest. Then, later, the trial court ordered the Developers to pay the Taylors' substantial attorney's fees for the Lot 6 declaratory claims. *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.009 (authorizing an award of "equitable and just" attorney's fees in a declaratory judgment proceeding).

The Developers argue on appeal that because the easement-related declaration was wrong and because they did not have an interest affected by either of the declaratory judgments, the award of attorney's fees against them was neither equitable nor just.[1] *See id.* The Taylors, meanwhile, argue that the trial court properly awarded them attorney's fees from the Developers and that the absence of a Developer interest deprives the Developers of standing to challenge the fee award by disputing the merits of the underlying easement-related declaration on appeal.[2]

In truth, the absence of a Developer interest undermined the trial court's subject matter jurisdiction to grant the declaratory relief against them in the first place. Because the Developers had no legally cognizable interest in Lot 6 or the outcome of the requested declaratory judgments when those judgments were entered, there was no justiciable controversy between them and the Taylors. We will reverse the portions of the judgment that grant declaratory relief against the Developers.

---

[1]The Developers raise other challenges to the fee award as well, but we need not address those to resolve this appeal. *See* Tex. R. App. P. 47.1.

[2]The Taylors challenge standing only as to the easement-related declaration.

And because the trial court's award of attorney's fees did not take this lack of subject matter jurisdiction into account, we will reverse the attorney's fees awarded against the Developers and remand the case for reconsideration of that sole issue.

## I. Background

Prior to the subdivision development project that gave rise to this case, the Torian Lane Strip was a relatively narrow (sixty-foot-wide) strip of land that ran north–south along the western edge of Strait's property, connecting his property to Dove Road, which was several plots to the south.[3] Decades earlier, the owner of the Torian Lane Strip—James Torian—had purported to "dedicate[ it] to the use of the Public . . . to be used as a street for the tracts abutting thereon," but the parties disputed the effect of this dedication, and the land had not been paved, so they also disputed the extent to which the Torian Lane Strip had provided a passable roadway. *See Strait*, 576 S.W.3d at 816–17.

### A. Development Plan and Plat

In the early 2000s, one of the Developers—Savannah—began acquiring land along the Torian Lane Strip with the intention of developing a new subdivision called Torian Place. *Id.* at 807. The Developers determined that ownership of the Torian Lane Strip had been retained by James Torian, so they obtained quitclaim deeds from

---

[3]In our opinion resolving the parties' prior appeal, we included images depicting the configuration of the relevant plots. *See Strait v. Savannah Ct. P'ship*, 576 S.W.3d 802, 806, 806, 808, 814–16 (Tex. App.—Fort Worth 2019, pet. denied).

4

Torian's heirs. *Id.* at 807–08, 811. As part of the Torian Place development, the Developers proposed paving the portion of the Torian Lane Strip that connected to Dove Road but terminating the paved roadway in a cul-de-sac south of Strait's property. *Id.* at 807–08. Simply put, the newly paved roadway would not extend to Strait's property. *Id.* at 808. The remaining portion of the Torian Lane Strip that ran up to and along the western edge of Strait's property would become part of a plot in the new Torian Place neighborhood—a plot known as Lot 6. *See id.*

Savannah prepared a municipal plat to reflect this development plan, and after it transferred ownership of its Torian Place properties to JMJ, that entity signed the plat. The City of Southlake approved the plat, and in 2015, development of Torian Place commenced. *See id.* at 808–09.

**B.  Lawsuit**

Not long thereafter, Strait filed suit against the Developers, and after he transferred a segment of his land to the Taylors, they intervened in the case as well. *Id.* at 809. Over the years of litigation that followed, Strait and the Taylors asserted numerous causes of action against the Developers and others, including trespass to try title, trespass, and conspiracy. *See id.* In the end, though, the heart of the lawsuit centered around (1) Strait's and the Taylors' claims that they held title to the portions

of the Torian Lane Strip that abutted their properties (the Abutting Properties);[4] (2) the Taylors' request for a declaratory judgment to recognize that the City-approved plat was invalid to the extent that it clouded their title to their Abutting Property (by showing it to be part of Lot 6); and (3) the Taylors' request for a declaratory judgment to recognize a private, defined easement over the remainder of the Torian Lane Strip on Lot 6.[5]

Initially, the trial court granted summary judgment for the Developers, but this court reversed the summary judgment due to unresolved fact issues that precluded a title determination.[6] *See id.* at 805–18. While the case was on appeal, in 2019, JMJ conveyed its interest in Lot 6 to a nonparty, VPG Investments, Ltd., and VPG later conveyed Lot 6 to Gazim Idoski, who was already a defendant in the case. So by the time the first case returned to the trial court, none of the Developers owned any interest in Lot 6.

---

[4]As discussed in our prior opinion, Strait and the Taylors contended that their Abutting Properties extended to the centerline of the Torian Lane Strip. *See id.* at 805, 817–18.

[5]By 2022, Strait's live petition did not include a declaratory judgment claim, but the Taylors pleaded declaratory judgment claims, and Strait joined in the Taylors' motion for a summary declaratory judgment regarding the invalidity of the City's plat.

[6]The title determination was both legally and factually complicated, and we discussed many of those complications in detail in our prior opinion. *See id.* at 805–18. We need not recite such details here as they are not relevant to our resolution of this appeal. *See* Tex. R. App. P. 47.1.

6

On remand, the trial court consolidated the case with a related lawsuit that Strait had filed. Ultimately, though, in early 2022, Strait and the Taylors narrowed their causes of action against the Developers to the declaratory judgment claims, they limited the scope of those claims to Lot 6, and they nonsuited all defendants other than Idoski and the Developers.[7]

## C.    Summary Judgment Motions

Around the same time in early 2022,[8] Strait and the Taylors filed several motions for partial summary judgment, three of which are relevant here.[9] One of the motions sought judgment against Idoski on Strait's and the Taylors' trespass to try title claims, and the trial court granted that motion, awarding them title to their Abutting Properties. The Developers were not parties to these claims.

---

[7] During the course of the litigation, the case ballooned to involve more than fifteen defendants, including homeowners who had purchased lots in Torian Place, lenders, the City of Southlake, and various City representatives.

[8] Strait and the Taylors nonsuited many of the defendants after moving for summary judgment but before the trial court ruled on the motions.

[9] Strait and the Taylors also filed motions for summary judgment to dismiss the Developers' declaratory counterclaim, through which the Developers sought a declaratory judgment that Strait and the Taylors enjoyed "no easement of defined dimensions over and along the [Torian Lane Strip] but that [they] enjoy[ed] a mere right of passage (of undefined dimension), which [wa]s satisfied by the paved public road that [wa]s now Torian Lane." The trial court granted these motions, and the Developers do not challenge the dismissal of their counterclaim on appeal.

But the Developers were parties to the other two claims on which the Taylors sought summary judgment.[10] In those summary judgment motions, (1) they requested a declaration recognizing a private, defined easement over the entire Torian Lane Strip (including the portion platted as part of Lot 6); and (2) they requested a declaration recognizing the invalidity of the City's plat to the extent that it clouded their title to the Abutting Property on Lot 6.

## D. Summary Judgment Hearing

At the hearing on the motions, the trial court touched upon the question of justiciability, asking whether the Developers would be "prejudiced in any way . . . by any rulings today [on the easement issue]" since they did not own any interest in Lot 6 or any other properties abutting the Torian Lane Strip. In response, the Developers' counsel acknowledged that they would "probably not" be affected by the easement-related declaratory judgment "[o]ther than attorney's fees."

The Developers' interest in the outcome was questioned again when the discussion turned to the plat-related declaratory judgment. The Taylors' counsel explained that one of the Developers—Savannah—had submitted the challenged plat

---

[10]Strait did not join in the Taylors' summary judgment motion for an easement-related declaration, and although he joined their summary judgment motion for a plat-related declaration, Strait's live petition did not include a declaratory judgment action. Either way, the final easement- and plat-related declarations issued against the Developers did not address Strait's property.

8

and that another Developer—JMJ—had signed it, but the trial court still questioned the Developers' stake in the outcome:

> THE COURT: But I don't understand, for your client [i.e., the Developers], other than attorney's fees, what do they care?
>
> [Developers' counsel]: Because we submitted the plat. . . . [W]e made the Development . . . and now it's got consequences that go beyond us.
>
> THE COURT: For what? Not for your client, right? I mean, if the plat is invalidated for [Idoski], what does that have to do with your client? I know your client doesn't want attorney's fees awarded against it, but what does it have to do with you?
>
> [Developers' counsel]: We submitted the development, and we have homeowners that live in the development, right? They relied on the development when they bought the land.
>
> THE COURT: It doesn't affect any of them. [Strait and the Taylors] said [they] nonsuited all of those claims except with regard to [Lot 6].
>
> [Developers' counsel]: It affects Mr. Idoski.
>
> THE COURT: Did your client sell directly to Mr. Idoski?
>
> [Idoski's counsel]: Yes, Your Honor, and th[ere]'s a warranty of title under the conveyance instrument. So there is –
>
> THE COURT: But that's not part of this case, right?
>
> [Idoski's counsel]: That is not part of this case . . . [.]

As the trial court asked further questions regarding the Developers' potential liability to Idoski under the general warranty deed, the discussion revealed that such liability was ambiguous and hypothetical—Idoski's counsel did not enunciate a potential theory of liability for the Developers, he did not address the fact that only one

9

Developer had signed Idoski's warranty deed (and only as VPG's general partner), and he conceded that Idoski had been aware of the lawsuit and lis pendens when he purchased Lot 6.

Apart from this discussion of the general warranty deed, no party identified a Developer interest affected by the declarations, and no party explained how Strait's or the Taylors' alleged injuries would be redressed by entry of the narrowed declaratory judgments against the Developers.[11]

## E.    Judgment and Attorney's Fees

The trial court granted the Taylors' easement- and plat-related summary judgment motions against both Idoski and the Developers.[12]   In the interlocutory summary judgment orders and its final judgment, the trial court declared that the Taylors had a defined easement over the portion of Lot 6 that had been part of the Torian Lane Strip (thereby giving the Taylors access to their Abutting Property from the newly paved cul-de-sac); and it declared that, as among the remaining parties to

---

[11]Later, at a hearing on the final judgment, the trial court asked the Developers' counsel to clarify if his clients were still parties to the case, and he responded, that "well, they have a judgment against them for attorney's fees[, s]o technically, yeah, I think we're a party[, but w]e don't own land in the development."

[12]The easement- and plat-related summary judgment motions did not seek attorney's fees; they sought only the declarations themselves.   The trial court's interlocutory orders granted the summary judgments against Idoski and the Developers.  Later, the trial court's final judgment recited that it had granted summary judgment on the easement- and plat-related declarations and reiterated those declarations.

the case,[13] the City's plat was "void and of no effect . . . with respect to the [Taylors'] Abutting . . . Property."[14]

Both the Developers and the Taylors then moved to recover their attorney's fees related to the Taylors' declaratory judgment claims.[15] *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.009. The Developers reminded the trial court that four of the five of them "ha[d] not owned lots in the [Torian Place development] since the inception of this suit . . . [and] would not be affected by [the Taylors'] requested declaratory relief," so "they were always improper parties with respect to [the Taylors'] declaratory judgment claims," and that the fifth Developer—JMJ—had "became an improper declaratory judgment defendant when Idoski acquired Lot 6." The Developers thus argued that the equities weighed in favor of their recovering attorney's fees. But the

---

[13]The judgment clarified that it "d[id] not adjudicate the rights of any non-parties, including, without limitation, the City of Southlake."

[14]The trial court initially granted the plat-related declaration, then it changed course by failing to include the declaration in its judgment. The Taylors protested and moved for a new trial. Because the challenged plat located the Taylors' Abutting Property within the boundary of Lot 6, they argued that the plat-related declaration was "needed to resolve and avoid disputes between [the Taylors] and Idoski" and that "future conveyances of Lot 6 may cloud their title in the absence of a declaration that the Plat is invalid with respect to their property." They claimed that even though the plat-related declaration would not bind the City—which was no longer a party—and would not impact the sewer and other improvements located on the Taylors' Abutting Property, it "w[ould] be adequate because it w[ould] afford complete relief between Idoski and [the Taylors]." The trial court subsequently entered an amended judgment that included the plat-related declaration.

[15]The Developers also sought to recover attorney's fees from Strait.

11

Taylors protested that the Developers had "created the dispute that gave rise to this litigation" and had "been actively and aggressively involved in opposing [the Taylors'] requested declaratory relief throughout th[e] litigation," so ordering the Developers to pay their attorney's fees was equitable.

Ultimately, the trial court awarded the Taylors $363,295.45 in attorney's fees from the Developers,[16] plus postjudgment interest, conditional appellate fees, and court costs.

## II. Discussion

The Developers raise four issues on appeal: they argue that the trial court's award of attorney's fees was erroneous (1) because the Taylors should not have prevailed on the merits of their easement-related declaratory judgment claim; (2) because the plat-related declaration was a recast title claim; (3) because the award of fees was not equitable or just; and (4) because the award of fees was not reasonable or necessary. Throughout their arguments, the Developers return to the fact that they did not own any property interest affected by the trial court's declaratory judgments, so ordering them to pay the Taylors' attorney's fees to obtain those declaratory judgments was, in their view, unjust. The Taylors do not dispute the absence of a

---

[16]The Taylors were awarded additional attorney's fees from Idoski. They requested an additional $55,588.80 in attorney's fees incurred on their title claim because, they argued, they "had to prove title before they could prevail on their declaratory judgment claims." The trial court appears to have excluded this amount from the final awards.

12

Developer interest affected by the declaratory judgments but instead argue that this absence deprives the Developers of standing to attack the merits of the declarations on appeal, even as a method of undermining the attorney's fees awarded against them.[17] In other words, both parties indirectly question the justiciability of the declaratory judgment claims as between the Developers and the Taylors.

Justiciability is a constitutional component of subject matter jurisdiction; it cannot be waived and may be raised for the first time on appeal.[18] *See Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443–45 (Tex. 1993).

## A. Law on Justiciability

The doctrine of justiciability originates in the constitutional prohibition on advisory opinions. *See Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 147 (Tex. 2012); *Patterson v. Planned Parenthood of Hous. & Se. Tex., Inc.*, 971 S.W.2d 439, 442–43 (Tex. 1998); *cf. Trustgard Ins. v. Collins*, 942 F.3d 195, 200 (4th Cir. 2019) ("That courts may not issue advisory opinions is one of the most long-standing and well-settled

---

[17]The Taylors allege that the Developers lack standing to challenge the underlying merits of the easement-related declaration; they do not challenge the Developers' standing to challenge the underlying merits of the plat-related declaration.

[18]Even if the parties had not raised the issue, we could review the trial court's subject matter jurisdiction sua sponte. *See Am. K-9 Detection Servs., LLC v. Freeman*, 556 S.W.3d 246, 260 (Tex. 2018) (noting that justiciability is jurisdictional and "may be raised at any time or by the court sua sponte" (italics removed)); *Tex. Workers' Comp. Comm'n v. Garcia*, 893 S.W.2d 504, 517 n.15 (Tex. 1995) (noting that because standing is a component of subject matter jurisdiction it "may be raised by an appellate court sua sponte").

jurisdictional rules, reflected as early as 1793 when the Supreme Court refused to render an advisory opinion for President Washington.").[19] Courts are barred from rendering advisory opinions on "abstract question[s] of law" that, rather than "remedying an actual or imminent harm, . . . address[] only a hypothetical injury." *Tex. Ass'n of Bus.*, 852 S.W.2d at 444 (explaining why an opinion is advisory when a plaintiff lacks standing). Thus, a declaratory judgment "is appropriate only if a justiciable controversy exists as to the rights and status of the parties and the controversy will be resolved by the declaration sought." *Sw. Elec. Power Co. v. Lynch*, 595 S.W.3d 678, 685 (Tex. 2020) (quoting *Bonham State Bank v. Beadle*, 907 S.W.2d 465, 467 (Tex. 1995)).

For a justiciable controversy to exist, there must be "a real and substantial controversy involving [a] genuine conflict of tangible interests." *Id.* (quoting *Bonham State Bank*, 907 S.W.2d at 467). If the parties "lack a legally cognizable interest in the outcome" such that "the court's action on the merits cannot affect the parties' rights or interests," then the controversy is not justiciable. *Heckman*, 369 S.W.3d at 162; *see Abbott v. Mexican Am. Leg. Caucus, Tex. House of Representatives*, 647 S.W.3d 681, 689 (Tex. 2022) (quoting *Heckman*); *cf.* Tex. Civ. Prac. & Rem. Code Ann. § 37.006(a)

---

[19]Because justiciability is a constitutional prerequisite to suit under both federal and Texas law, we may look to "the more extensive jurisprudential experience of the federal courts on this subject for any guidance it may yield." *Tex. Ass'n of Bus.*, 852 S.W.2d at 444 (providing similarly for standing component of justiciability); *see Heckman*, 369 S.W.3d at 151 & n.60, 154–55.

(providing that "all persons who have or claim any interest that would be affected by the declaration must be made parties" to a declaratory judgment suit).  Although two parties may disagree on an issue, mere disagreement on an abstract issue does not warrant judicial review absent a legally cognizable interest in the outcome.  *See Aetna Life Ins. Co. of Hartford v. Haworth*, 300 U.S. 227, 240–41, 57 S. Ct. 461, 464 (1937) (distinguishing "[a] justiciable controversy . . . from a difference or dispute of a hypothetical or abstract character [or] from one that is academic or moot" and explaining that a court may hear a controversy only if it is "one that is appropriate for judicial determination"); *Lakeway Psychiatry & Behav. Health, PLLC v. Brite*, 656 S.W.3d 621, 635 (Tex. App.—El Paso 2022, no pet.) (affirming trial court's finding that there was no justiciable controversy and stating that "courts must not decide cases that amount to no more than a disagreement as mere difference of opinion, not involving the assertion of adverse interests, is not sufficient to support an action for declaratory judgment" (internal quotation marks omitted)).

Justiciability is a concern not only when a suit is filed but at all points in the case.  *Heckman*, 369 S.W.3d at 147.  If at any stage of the litigation "the parties lack a legally cognizable interest in the outcome" such that "the court's action on the merits cannot affect the parties' rights or interests" anymore, then there is no longer a justiciable controversy—i.e., the case becomes moot—and the court lacks subject matter jurisdiction to resolve it on the merits.  *Id.* at 162.

## B. Lack of Justiciability

Once the Taylors narrowed the scope of their summary judgment motions on their easement- and plat-related declaratory judgment claims against the Developers and Idoski, the controversies presented for the trial court's resolution were (1) whether the Taylors had a defined, private easement over the portion of the Torian Lane Strip that overlapped with Lot 6 and (2) whether the Taylors' newly-recognized title to their Abutting Property prevailed over the City plat's depiction of Lot 6 so as to nullify that portion of the plat. *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.004(a) (authorizing declaratory judgment to "determine[] any question of construction or validity arising under [an] instrument, statute, ordinance, contract, or franchise" and to "declar[e] . . . rights, status, or other legal relations thereunder"). The Developers had no legally cognizable interest in either declaration of rights.

### 1. Easement-Related Declaration

It is undisputed that by the time the Taylors sought summary judgment on their easement-related claim in 2022, none of the Developers owned any portion of Lot 6. Although JMJ had owned Lot 6 at the start of the litigation, it conveyed the property to a third party in early 2019, so declaring an easement over Lot 6 in 2022 could no longer affect JMJ's rights or interests. *See Heckman*, 369 S.W.3d at 162. Put differently, when the trial court declared that the Taylors "ha[d] a valid and subsisting sixty-foot-wide access easement over Lot 6 of Torian Place . . . for the purpose of accessing all or any portion of [the Taylors'] property," the Developers had no

16

authority to enforce, implement, or otherwise give effect to that easement. *See Sw. Elec. Power Co.*, 595 S.W.3d at 685 (noting that declaratory relief is appropriate only if "the controversy will be resolved by the declaration sought"); *Heckman*, 369 S.W.3d at 155–56 (discussing justiciability requirement that, as part of standing, plaintiff must establish a substantial likelihood that the requested relief will remedy the alleged injury in fact). The summary judgment redressed the Taylors' injuries because it bound the owner of Lot 6 (Idoski) and Lot 6 itself—not because it bound the Developers.

Because the Developers had no legally cognizable interest in the outcome of the Taylors' easement-related declaratory judgment claim, this claim did not present a justiciable controversy between them, and the trial court lacked subject matter jurisdiction to grant summary judgment against the Developers on the merits of that nonjusticiable claim.

### 2. Plat-Related Declaration

The same is true of the trial court's plat-related declaration.

Both parties characterize this declaration as an extension of the Taylors' title claim against Idoski. The Developers contend that the plat-related declaration is a reframed trespass to try title claim that does nothing more than recognize the Taylors' title to their Abutting Property and "only affects Lot 6 and its owner, Idoski." And the Taylors frame the plat-related declaration as "necessary to apprise third parties" that the plat does not impair the Taylors' title to their Abutting Property and "to prevent Idoski from later attempting to deed Lot 6 as shown on the Torian Place

17

Plat" rather than as modified by the trial court's judgment. In essence, then, the plat-related declaration clarified that, to the extent that the Taylors' title to the Abutting Property conflicted with or was clouded by the City plat's depiction of Lot 6, the Taylors' title controlled.

But as with the easement-related declaration, the effect of the plat-related declaration was limited to Lot 6, and none of the Developers had any interest in Lot 6 when the Taylors moved for summary judgment, when the summary judgment was entered, or when the final judgment was entered. If the Taylors had obtained the plat-related declaration against the Developers alone (without Idoski's inclusion in the judgment), it would have done nothing to redress their allegedly clouded chain of title. *See Sw. Elec. Power Co.*, 595 S.W.3d at 685 (requiring "the controversy [to] be resolved by the declaration sought"); *Heckman*, 369 S.W.3d at 155–56 (discussing redressability requirement). Again, it was the entry of this declaration against Idoski—the owner of Lot 6—that gave it tangible effect.

The fact that Idoski indirectly obtained Lot 6 from the Developers via a general warranty deed did not change this. Although the parties pointed the trial court to Idoski's deed as the basis for the Developers' interest in the outcome of the plat-related declaration, the record reveals that only one of the Developers signed the deed (V. Patrick Gray Custom Homes) and it did so only in a representative capacity as general partner for VPG, which was not a party to this litigation.

18

Regardless, any potential warranty-deed litigation was purely hypothetical. Nothing in the record indicates that Idoski had asserted warranty-deed claims against the Developers based on the plat's representation of Lot 6, and the parties' discussion of the issue with the trial court implicitly confirmed that he had not. The Developers did not have a legally cognizable interest in the plat-related declaration merely because the declaration had the potential of serving as evidence in hypothetical future litigation that may or may not occur and may or may not involve one of the five of them. *Cf. Moody v. Nat'l W. Life Ins.*, 634 S.W.3d 256, 288 (Tex. App.—Houston [1st Dist.] 2021, no pet.) (op. on reh'g) (holding declaratory judgment claim seeking interpretation of contract was nonjusticiable "[b]ecause the only ramification identified in the trial court or on appeal [wa]s the potential for future controversies to arise involving the contract"); *In re Est. of Denman*, 270 S.W.3d 639, 644 (Tex. App.—San Antonio 2008, pet. denied) (rejecting argument that coexecutor's "own alleged potential personal liability" for a tax deficiency constituted a legally cognizable interest in the probate court judgment and noting that there was no indication of the hypothetical Internal Revenue Service investigation); *J.E.M. v. Fid. & Cas. Co. of N.Y.*, 928 S.W.2d 668, 672 (Tex. App.—Houston [1st Dist.] 1996, no writ) (holding declaratory judgment was nonjusticiable because "[a]ny determination of an insurer's duty to pay would be hypothetical before judgment is granted against the insured, and the court's opinion would be purely advisory").

19

Furthermore, our sister court has recognized that when real property is the subject of a pending declaratory judgment action and a party transfers its interest in that property, the transferor does not retain a legally cognizable interest in the judgment based on the property "interest that it once held in the past" or its perceived "obligation to defend the title it conveyed." *Jay Kay Bear Ltd v. Martin*, No. 04-14-00579-CV, 2015 WL 6736776, at *3–7 (Tex. App.—San Antonio Nov. 4, 2015, pet. denied) (mem. op.) (holding that appellant that transferred interest lacked standing to challenge declaratory judgment on appeal). That an undesirable declaratory judgment could "create problems for [the transferor]" in its dealings with the transferee does not amount to a present interest in the subject matter of the judgment. *Id.* at *6–7; *see El Caballero Ranch, Inc. v. Grace River Ranch, L.L.C.*, No. 04-16-00298-CV, 2018 WL 3369958, at *2 (Tex. App.—San Antonio July 11, 2018, no pet.) (mem. op.) (relying on *Jay Kay Bear Ltd.* and holding that appellant that transferred interest in underlying real property while appeal was pending lacked standing to pursue appeal because it lacked "a legally cognizable interest that [wa]s prejudiced or injuriously affected by the trial court's judgment").

Therefore, as with the easement-related declaration, the plat-related declaration issued against the Developers resolved a nonjusticiable controversy between the parties to this appeal.

The trial court erred by entering summary judgment against the Developers on the merits of the Taylors' two nonjusticiable declaratory judgment claims, over which

20

it lacked subject matter jurisdiction.[20] We reverse the portions of the final judgment that grant easement- and plat-related declaratory relief against the Developers.[21]

## C. Justiciability of Attorney's Fees

Although the trial court lacked jurisdiction to resolve the merits of the narrow declaratory judgment claims pursued against the Developers in the Taylors' motions for summary judgment, it retained subject matter jurisdiction to consider and award "costs and reasonable and necessary attorney's fees [from the Developers] as [we]re equitable and just." Tex. Civ. Prac. & Rem. Code Ann. § 37.009.

Texas law "authorizes courts to award equitable and just fees in any proceeding under the [Uniform Declaratory Judgments Act, and] . . . it does not require the trial

---

[20]Elsewhere in the Taylors' brief—in their defense of the award of attorney's fees as equitable and just—they allege that the Developers' "wrongful conduct [allegedly] caused the lawsuit and required the Taylors to[] assert declaratory judgment claims to protect their property rights." This mimics their trial argument that fees should be awarded because the Developers "created the dispute" and "actively . . . oppos[ed the Taylors'] requested declaratory relief." But this allegation does not create a legally cognizable interest in the declaratory judgments.

A declaratory judgment is a declaration of rights. *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.004(a), (c). Neither fault nor damages are necessary elements of a declaratory judgment claim, *see id.*, and they were not elements of the Taylors' requested declarations in this case. *See IE.Com, Ltd. v. Peeler*, No. 05-19-00496-CV, 2020 WL 3424913, at *3 (Tex. App.—Dallas June 23, 2020, no pet.) (mem. op.) (noting that damages are not "a necessary element under [S]ection 37.004(a)" and were not an element when party did not seek damages).

[21]Because the trial court entered a final judgment that "consolidated [its interlocutory orders] into one final, appealable judgment" and that "control[led] to the extent [that] it differ[ed] from any prior interlocutory orders," we reverse the relevant portions of the final judgment rather than the superseded summary judgment orders.

court to consider or render judgment on the merits of that claim" as a prerequisite. *Yowell v. Granite Operating Co.*, 620 S.W.3d 335, 355 (Tex. 2020) (emphasis removed) (citing *Castro v. McNabb*, 319 S.W.3d 721, 735 (Tex. App.—El Paso 2009, no pet.), with approval). So even if a trial court lacks subject matter jurisdiction to adjudicate the merits of a declaratory judgment claim, it may still award attorney's fees related to that claim. *See Castro*, 319 S.W.3d at 735–36 (holding that Texas law "does not require a judgment on the merits of the [declaratory judgment] dispute as a prerequisite to a fee award" and that trial court's lack of jurisdiction to issue declarations did not deprive it of jurisdiction to award attorney's fees); *see also Devon Energy Prod. Co., L.P. v. KCS Res., LLC*, 450 S.W.3d 203, 220 (Tex. App.—Houston [14th Dist.] 2014, pet. denied) (concluding that "attorney's fees may be awarded to a party defending against a declaratory judgment action over which the trial court has determined that it lacks subject matter jurisdiction").

Here, the Taylors and the Developers sought attorney's fees for the easement- and plat-related declaratory judgment claims, and unlike the claims themselves, the Developers had a legally cognizable interest in recovering or being ordered to pay "equitable and just" attorney's fees. *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.009. The fee dispute thus presented a justiciable controversy between the parties, and the trial court had subject matter jurisdiction to resolve it. *Cf. Allstate Ins. v. Hallman*, 159 S.W.3d 640, 643 (Tex. 2005) (explaining that if a dispute over a declaratory judgment becomes moot after judgment, the issue of attorney's fees "'breathes life' into [an]

22

appeal and prevents it from being moot");[22] *Hansen v. JP Morgan Chase Bank, N.A.*, 346 S.W.3d 769, 774–75 (Tex. App.—Dallas 2011, no pet.) (holding that "a case under the Declaratory Judgments Act remains a live controversy, even if all requests for substantive declaratory relief become moot during the action's pendency, as long as a claim for attorneys' fees under the Act remains pending").

Nonetheless, given the altered status of the parties as to their success on the merits—the merits of the nonjusticiable declaratory judgment claims, that is—the equities underlying the trial court's determination of attorney's fees have changed. *See Kachina Pipeline Co. v. Lillis*, 471 S.W.3d 445, 455 (Tex. 2015) (noting that reversal of declaratory judgment does not require reversal of fee award but nonetheless reversing fee award due to changed outcome on primary issues); *Allstate*, 159 S.W.3d at 643

---

[22]The Taylors attempt to distinguish *Allstate* by arguing that the jurisdictional issue in that case was mootness while the jurisdictional issue here, they claim, is standing to challenge the underlying merits of the declaratory judgment on appeal. *See Allstate*, 159 S.W.3d at 642–43 (discussing mootness). But these are related doctrines of justiciability and "boil down to the same question." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 n.5, 134 S. Ct. 2334, 2341 n.5 (2014) (noting that standing and ripeness originate from the same constitutional limitation and "boil down to the same question"); *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128 n.8, 127 S. Ct. 764, 772 n.8 (2007) (similar). In fact, "[m]ootness has been described as the doctrine of standing set in a time frame[; t]he requisite personal interest that must exist at the commencement of the litigation . . . must continue throughout its existence." *Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 68 n.22, 117 S. Ct. 1055, 1069 n.22 (1997) (internal citations and quotation marks omitted); *see Travelers Ins. v. Joachim*, 315 S.W.3d 860, 865 (Tex. 2010) (discussing doctrines of justiciability and differences between a case that "lack[s] justiciability from the moment of pleading" versus a case that becomes moot after "initially [having] a live . . . justiciable case between proper parties").

(noting that when merits of declaratory judgment become moot while on appeal, attorney's fees remain a live controversy because reversal "would necessitate a remand to the trial court to consider whether an award of attorney's fees is appropriate in light of the changed status of [the] prevailing parties"); *SAVA gumarska in kemijska industria d.d. v. Advanced Polymer Scis., Inc.*, 128 S.W.3d 304, 324 (Tex. App.—Dallas 2004, no pet.) (recognizing that "after a declaratory judgment is reversed on appeal, an award of attorneys' fees may no longer be equitable and just"); *cf. Strait*, 576 S.W.3d at 818 (reversing attorney's fees based on reversal of underlying summary judgment). Accordingly, we reverse the portions of the trial court's judgment that order the Developers to pay the Taylors' attorney's fees—its award of $363,295.45 against the Developers for the Taylors' trial court attorney's fees and its conditional award for the Taylors' appellate fees—and we remand the case for reconsideration of this issue.

### III.  Conclusion

Because the Developers owned no interest in Lot 6 when the summary judgments were entered, the easement- and plat-related declaratory judgment claims against them did not present justiciable controversies.  The trial court lacked subject matter jurisdiction to grant these summary judgments against the Developers, and we reverse the portions of the judgment that reflect and issue such declaratory relief.

Although the trial court retained subject matter jurisdiction to award attorney's fees, our resolution of this appeal alters the equities between the Developers and the Taylors, so we also reverse the portions of the judgment awarding the Taylors

24

attorney's fees from the Developers and remand the case for reconsideration of that sole issue.[23]  *See* Tex. R. App. P. 43.2(d).

/s/ Bonnie Sudderth

Bonnie Sudderth
Chief Justice

Delivered:  February 8, 2024

---

[23]We leave the judgment, including the declarations themselves, undisturbed as it relates to Idoski.